57 So.2d 89

**SPIRES et al. v. NIX.**

**4 Div. 672.**

Supreme Court of Alabama.

Jan. 24, 1952.

Rehearing Denied March 6, 1952.

———◇———

Chauncey Sparks, Eufaula, and Jack Wallace, Clayton, for appellants.

Archie I. Grubb, Eufaula, for appellee.

FOSTER, Justice.

The controversy between these parties is what is commonly called a boundary line dispute. More particularly, there is a strip of land in dispute between their respective holdings whose ownership is controlled by adverse possession in connection with deeds constituting the muniments of title of the property owners, respectively. The lots of land are in the town of Clayton, Alabama, and on the east side of North Midway Street, and were originally owned by Miss Atlanta White as one tract. Miss White conducted a private school for a number of years and was well known throughout that territory. She first conveyed the lot claimed by complainant, which we will designate as the Nix lot. The description in her deed of that lot is not shown by the record, but it was to Bob T. Roberts, and he conveyed the lot to Dr. B. F. Jackson in 1916.

So far as here material and to paraphrase the description in the deed to Dr. Jackson, it refers to the property as the house and lot known as the White Place, formerly bought by Bob T. Roberts from Atlanta White, and gives the boundaries as being on the north by Dr. R. L. White and on the west by North Midway Street, running north and south 102 feet, more or less, and east from said North Midway Street to the Williams land. The lot now claimed by the complainant, Mrs. Nix, is approximately 114 feet north and south along North Midway Street instead of 102 feet. Dr. Jackson conveyed the lot to Dr. J. W. Robertson in 1923, using the same description. Dr. Robertson's heirs and successors in interest conveyed it to the complainant, Mrs. Nix, in 1944. It is there described, to paraphrase it, as known as the Dr. J. W. Robertson residence property, and particularly described by metes and bounds as follows, fronting on North Midway Street 102 feet, more or less, and bounded on the north by Mrs. Ann Jackson and on the east by Grubbs and on the south by Peach, and being the lot deeded to Dr. Robertson by Dr. Jackson.

The respondents, the Spires, claim the lot on the north side of complainant's lot under a deed executed to them by Mrs. Ann Jackson on January 15, 1950. Mrs. Ann Jackson bought the Spires' lot from White in 1934. The description of the lot to Mrs. Ann Jackson in said deed is that it begins at the northwest corner of the Nix residence lot, running north along Midway Street 81 feet, and east to other lands. The east and south lines need not be further de-

scribed. The Spires are in possession of a lot of those dimensions whose southwest corner begins at the place where complainant contends is the true northwest corner of her lot.

The claim on behalf of complainant, Mrs. Nix, with reference to the strip in controversy is that it was acquired by adverse possession.

The evidence shows that while Dr. Jackson was in the occupancy of the land he did not use the strip of land in controversy, but had a garage on the south side of his lot and an entrance to it along the south side. His testimony is that there was no controversy about the north line and he thought nothing about it. But it clearly appears that during Dr. Robertson's ownership, extending over a period of twenty-one years, there was constant use of the strip in question by him and others in connection with his ownership.

The trial court found from the evidence that the title to this strip was acquired by complainant on account of such adverse possession in connection with that of her predecessors. It is not necessary to rehearse the evidence upon the basis of which the trial court acted. Much of it was the oral testimony of witnesses examined before him, and there is ample evidence to support his conclusion of fact that the ownership was acquired by Dr. Robertson. Such evidence is available to establish the rights of the parties with respect to a boundary line dispute. Brantley v. Helton, 224 Ala. 93, 139 So. 283; Hancock v. Warren, 235 Ala. 180, 177 So. 907; Alford v. Rodgers, 242 Ala. 370, 6 So.2d 409. Other cases need not be cited, as there is no question about the principle.

The question of law concerned in this controversy is whether or not the title which Dr. Robertson acquired by adverse possession was conveyed to the complainant, Mrs. Nix, and is within the description of the deed to her. Because if it is not within the description of the deed, complainant did not obtain the title which Dr. Robertson acquired by adverse possession and she has not had adverse possession for the required period. Those principles have been fully stated by us, and some of the cases so holding are: Alford v. Rodgers, supra; Denton v. Corr, 250 Ala. 149, 33 So.2d 625; Haywood v. Hollingsworth, 255 Ala. 453, 51 So.2d 674; Wilson v. Cooper, ante, p. 184, 54 So.2d 286.

Appellants contend that complainant did not receive a conveyance of the controverted area, but only received a conveyance of a lot whose western boundary line was 102 feet, more or less. This is in reliance upon the cases of Alford v. Rodgers, supra; Haywood v. Hollingsworth, supra; Denton v. Corr, supra, and Wilson v. Cooper, supra.

Complainant's claim is in recognition of a theory that her adverse possession may be tacked to that of the Robertsons without relying solely upon the acquisition of the title which the Robertsons may have acquired by adverse possession. That was probably in the mind of the trial court in stating that the complainant acquired title by her possession together with that of her predecessors. The principle is that if her possession is tacked to that of the Robertsons, it is not necessary that she have a conveyance from the Robertsons embracing the particular strip because her possession can be tacked without the necessity of such a conveyance. This principle has been declared in several of our cases, the first of which seems to have been Holt v. Adams, 121 Ala. 664, 25 So. 716, and Oliver v. Williams, 163 Ala. 376, 50 So. 937. Those cases hold that in order to establish continuity of adverse possession which will ripen into title, it is not necessary that there be a conveyance by the prior possessor to the one subsequently claiming possession, such as would be necessary to convey the legal title because "the privity required to establish continuity of adverse possession which will ripen into title may be effected by any conveyance or agreement, written or verbal, which has for its object a transfer of the rights acquired under the original entry. A transfer of possession alone, without written evidence of the transfer, is sufficient to create privity."

The trouble about the application of this theory to the status of complainant in this case is that it contemplates a situation

where the prior claimant by adverse possession had not acquired the title to the property at the time of his conveyance to the complainant but only acquired a status of adverse possession which could lead to a title in complainant when tacked to her possession subsequently occurring. If the Robertsons had acquired the title by adverse possession at the time of the conveyance to complainant, that title could only pass to the complainant by a sufficient conveyance or by the status of adverse possession for the required length of time by the complainant subsequent to her conveyance from them. Milstead v. Devine, 254 Ala. 442, 48 So.2d 530; Tabor v. Craft, 217 Ala. 276, 116 So. 132.

Complainant did not have such possession sufficiently long to accomplish that purpose. Therefore, for her to maintain a status of ownership of the strip of land, complainant must have a deed from the Robertsons in which it is sufficiently described.

So that, we are remitted to an interpretation of the description in the deed from the Robertsons to the complainant, which we have heretofore paraphrased. We emphasize the fact that the lot is there described as being known as the Dr. J. W. Robertson residence property, but that the west line of it on North Midway Street is "102 feet, more or less." We think the trial court was justified in finding from the evidence, as he evidently did, that the lot known as the Dr. J. W. Robertson residence property embraced the strip in controversy. It is also clear that if the west line of said lot is only 102 feet north and south on North Midway Street, it does not include the area in controversy. So that, we repeat, the question here is one of interpretation as we observed in the case of Van Valkenburg v. Geron, 249 Ala. 467, 31 So.2d 767.

The particular inquiry is whether the general description that the lot that is known as the Dr. J. W. Robertson residence property takes precedence over the further description that the west line of it it 102 feet, more or less.

In case of conflicting descriptions, courses and distances are controlled by and must yield to monuments, as well as to such descriptive words as the possession and occupancy of land by a named person. 11 C.J.S., Boundaries, § 20(b), p. 564; 8 Am. Jur. 789.

It is true that sometimes a general description will yield to a particular one but, when so, the particular description must itself be accurate and precise and be of such character as that it was evidently intended to take precedence over the general description. That theory is emphasized in the case of Guilmartin v. Wood, 76 Ala. 204.

In the case of Sumner v. Hill, 157 Ala. 230, 47 So. 565, the description under consideration was of the Hancock Place, followed by a more particular description by government numbers. The question in that case was whether the general description "The Hancock Place" or the government numbers which followed should prevail. Since the government numbers did not embrace all of the Hancock Place, it was held that the term "Hancock Place" is a sufficiently definite description without the aid of a more particular one by government numbers, and the Court declared the principle to be applicable that where a deed of conveyance contains a general description which is definite and certain in itself and followed by a particular description, the latter will not limit or restrict the grant which is clear and unambiguous in the general description.

To the same effect is Pendry v. Godwin, 188 Ala. 565, 66 So. 43. The description there under consideration in the deed was of the place known as the " 'Jess Myers Place,' described as follows" followed by government numbers. It was there observed that it was the manifest purpose of the grantor to convey to the grantee the Jess Myers Place, and that he did in effect convey the legal title to all that was known as the Jess Myers Place, and the fact that he described it by government numbers did not conclusively establish the description of the land by government numbers. Under those circumstances it was held, as it had been on a previous appeal, that the government numbers would be regarded as a misdescription. The Court thereby gave effect, without so expressing it, to the

principle declared in Greenleaf on Evidence, represented by the Latin term *"Falsa demonstratio non nocet."* (1 Greenleaf on Evidence [16th Ed.] 301). This principle is illustrated in 25 Corpus Juris 435, 35 C.J.S., Fallido-Falsario, p. 494.

■ After all, the intent of the grantor manifested by the words used in the grant, construed in the light of attendant facts and circumstances, is the controlling factor in determining the intent of the parties in respect to the land thereby conveyed.

The principle which we have stated above has its limitations, as shown in several of our cases. In Pettit v. Gibson, 201 Ala. 177, 77 So. 703, it is stated that when there are two such descriptions, one indicating the land by government numbers and the other designating the premises as the home place of a named person, the description by government numbers will generally prevail. The Gibson case refers to Sumner v. Hill, supra, by observing that there the particular description by government numbers covered only a part of the land included in the general description, saying that it was properly held that the general description in such cases will prevail. Further illustrating the theory that in interpretating such a description the intention of the parties must prevail, the cases of Head v. Hunnicutt, 172 Ala. 48, 55 So. 161, and Carter v. Chevalier, 108 Ala. 563, 19 So. 798, are cited.

It is said in Barker v. Mobile Electric Co., 173 Ala. 28, at page 36, 55 So. 364, at page 366, "What is most material and most certain in a description shall prevail over that which is less material and less certain." And in the case of Garner v. Morris, 187 Ala. 658, 65 So. 1000, the Court quoted from Guilmartin v. Wood, supra, and gave effect to a particular description, from which boundaries could be readily ascertained or declared with reference to prominent monuments, as controlling over a general description.

The description in the deed we are here dealing with, using the words "more or less," shows that it was not intended that the distance of 102 feet on North Midway Street be understood as accurate or exact. The property was sufficiently described by the general designation of it as being known as the Dr. J. W. Robertson residence property, and when the Robertson heirs conveyed it to the complainant, she went into possession of the strip in controversy and has had the possession since that time. That circumstance is material to show how the parties themselves interpreted the description.

■ This is particularly emphasized when distances are subject to the designation that they are "more or less" accurate. Distances are sometimes said to be more uncertain than other methods of description. 8 Am.Jur., 789, note 19; United States v. State Investment Co., 264 U.S. 206, 44 S.Ct. 289, 68 L.Ed. 639. When "more or less" is used in a deed stating quantity or distance, it means that the parties will run the risk of gain or loss, and if the quantity proves greater or less than that stated they shall nevertheless abide by their bargains. We have many cases in Alabama which illustrate that principle, headed by the case of Fredrick v. Youngblood, 19 Ala. 680; Carling v. Wilson, 177 Ala. 85, 58 So. 417; Hill v. Johnson, 214 Ala. 194, 106 So. 814. That is but a general statement of what is recognized throughout the country. 26 C.J.S., Deeds, § 102, p. 377.

■ Applying that principle to this situation, we think it is a fair inference from the evidence that the deed to complainant is sufficient to embrace the area in controversy. Therefore, we agree with the conclusion of the trial judge that complainant is the owner of the strip of land and that the boundary line described in his decree was properly fixed. The decree is affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.