202 So.2d 74

**Cary GRAHAM**

v.

**George C. HAWKINS, Sr., et al.**

**7 Div. 757.**

Supreme Court of Alabama.

Aug. 17, 1967.

Rehearing Denied Sept. 14, 1967.

Geo. C. Hawkins, Jr. of Hawkins & Rhea, Gadsden, for appellees.

Roy D. McCord and Inzer, Martin, Suttle & Inzer, Gadsden, for appellant.

MERRILL, Justice.

This appeal is from a decree establishing a boundary line between the parties who are coterminous owners of city lots in Gadsden. The line established by the trial court was one based upon the adverse possession of appellees and their predecessors in title.

The basic question presented is whether the adverse possession of appellees' predecessors can be tacked to that of appellees.

In 1923, T. A. Stringer owned Lot 10 and other lots in Block 18 of the Kyle Addition. On February 19, 1927, he sold adjoining property and the west half of Lot 10 to Ethel Rutenburg. There was a house on the property and the Rutenburgs built a lattice fence along their eastern boundary. The fence started a few feet south of the northeast corner of their lot and drifted east as it was built southward, and it ended at the southeast corner 4.9 feet east of the dividing line between the west half and the east half of Lot 10. The fence remained there from 1927, until it was replaced by appellee with a metal fence in November, 1963. On February 19, 1964, appellant tore down the metal fence, after requesting appellees to remove it because it was on his property. This act precipitated the filing of the bill of complaint, which prayed, in addition to the establishment of the boundary line, for injunctive relief and damages for the removal of the metal fence.

The appellant has a deed to the east half of Lot 10 and other property which came to him by mesne conveyances from the common source of title, T. A. Stringer. The east half of Lot 10 is and has been vacant. Appellant's deed was dated October 18, 1963.

The history of appellees' title is: 1927—deed from Stringer to Rutenberg; 1945—Rutenburg to George C. Hawkins, Jr.; 1955—Hawkins, Jr. to Hicks; 1960—Hicks to George C. Hawkins, Sr. and wife, appellees. In every deed in appellees' chain of title, the deed described other property and the west half of Lot 10; in every deed in appellant's chain of title, the deed described other property and the east half of Lot 10.

Thus, appellant and his predecessors in title have had paper title to the triangular strip which is the subject of this controversy, but appellees and their predecessors have had it fenced as part of their yard and claimed it for thirty-seven years.

The trial court found that the successive owners of appellees' lot, beginning with 1927, occupied said premises and the residence located thereon; and that, from the Rutenburgs to date, each of the grantees were successively placed in possession by their grantors and continuously, without a break, held possession adversely of the disputed property. The court also said:

"The Court further finds that along the Eastern boundary line of the said premises owned and occupied by Plaintiffs and their predecessors in title, from at least 1927, until the spring of 1963, a wooden lattice fence openly, continuously, exclusively and notoriously, existed and was maintained along said Eastern boundary line beginning at the Northeast corner of said premises and running in a Southern direction for about one-half the depth of said premises, and that during said period of time from the point in about the middle of said Eastern boundary line to the Southeast or front corner of said premises there was maintained and existed a hedge from said midpoint of said Eastern boundary line to within a few inches of the public sidewalk running South of and in front of the residence situated on said premises; that in the spring of 1963, said fence blew down and was propped up on at least two different occasions and that it and said hedge were removed in about November, 1963, at which time Plaintiffs constructed a metal fence along the entire Eastern boundary line of said premises owned and occupied by Plaintiffs on exactly the same line as said wooden lattice fence and said hedge had theretofore existed.

"The Court further finds that at no time until the incident giving rise to this proceeding, did Defendant or any of his predecessors in title dispute or disagree that said wooden lattice fence and said hedge, and later said metal fence,

constituted the boundary line between the property owned by Plaintiffs and that owned by Defendant, but on the contrary that no such dispute or disagreement thereto was made in spite of the continuous, open, notorious, adverse, exclusive and hostile maintenance and existence of said wooden lattice fence and said hedge, and later said metal fence, situated at the same place on said Eastern boundary line, from at least 1927, to the incident giving rise to this proceeding in 1964.

"The Court further finds that Plaintiffs and their predecessors in title, have had exclusive, open, notorious, continuous and adverse possession of said premises up to and including said Eastern boundary line (more particularly described hereinafter) on which was maintained and existed said wooden lattice fence, hedge and later said metal fence, for substantially more than 20 years before the filing of this proceeding; and that said holding by Plaintiffs and their predecessors in title is more than sufficient to meet the tests prescribed by law for establishing said Eastern boundary line as the true and lawful boundary line between the property of Plaintiffs and the property of Defendant."

Appellant's argument is that the adverse possession of the Rutenburgs cannot be tacked to any of the other grantees because no deed in the chain of title from the Rutenburgs described the triangular strip.

█] We note first that Tit. 7, § 828, Code 1940, dealing with adverse possession, does not apply "to cases involving a question as to boundaries between co-terminus owners," Sylvest v. Stowers, 276 Ala. 695, 166 So.2d 423; so color of title as required by the statute is not controlling in disputes between coterminous owners. Hancock v. Warren, 235 Ala. 180, 177 So. 907.

█] Throughout our cases, this court has maintained and applied the principle that the transfer of possession is sufficient to constitute the privity required for the tacking of one's adverse possession to that of his predecessor in title. It is expressed in Holt v. Adams, 121 Ala. 664, 25 So. 716, by Brickell, C. J., in these words: " * * * The privity required to constitute continuous adverse possession by tacking the possession of the original entryman to that of another may be effected by any conveyance, agreement, or understanding, written or verbal, which has for its object a transfer of the rights acquired under the original entry. *The transfer of the possession alone is sufficient to create the privity for this purpose, and written evidence of the transfer is not necessary when the property is held by the transferee under the claim of the first entryman.* * * *" (Emphasis supplied.) This statement is quoted and applied in Withers v. Burton, 268 Ala. 365, 106 So.2d 876, and that case stated that "[T]his doctrine is reaffirmed in the case of Spires v. Nix, 256 Ala. 642, 57 So.2d 89." We approved the tacking of possession without a specific description of the property held adversely in Motley v. Crumpton, 265 Ala. 565, 93 So.2d 413.

The principle is well summarized in 3 Am.Jur.2d, Adverse Possession, § 65, p. 156:

"* * * Thus, where a person having title by deed to a lot or tract of land described in the deed also has inclosed with it and is in possession of adjoining land to which he has no record title, and conveys the land by the description in the deed and delivers with it possession of the entire inclosure, the continuity of possession will not be broken, and the two possessions may be joined and considered as one continuous possession. So, where a purchaser of land incloses and occupies a tract outside his boundaries, believing it to be included therein, and in that belief conveys to another by the same description, intending that the grantee shall take the whole inclosed area, his possession may be tacked to that of his grantee. * * *"

Here, Rutenburg was the first entryman; the fence was built and the strip was held adversely for over eighteen years; they transferred the possession to Hawkins, Jr., who went into possession of the property including the fence. He remained in possession for ten years and transferred the possession, including the fence, to Hicks and, after five years of possession, it was transferred to Hawkins, Sr., who held it, including the lattice fence and the metal fence, for over three years before appellant made the first complaint in thirty-seven years of adverse possession.

A fence enclosing land is an outstanding symbol of claim of possession. The possession here of the strip enclosed by the fence was hostile, actual, exclusive, open, notorious and continuous for long past the prescriptive period of twenty years.

Since each grantee holding under the Rutenburgs entered into possession of the whole area up to and including the fence, and each transferred his legal paper title to his successor who went into possession up to the fence, the deed, taken into consideration with such transference of possession, was sufficient to raise the privity essential to the tacking of all the possessions from and including the Rutenburgs to the appellees.

We note that appellant did not obtain title to the disputed strip in his deed because title to it had been obtained by adverse possession long before appellant acquired title to the remainder of the east half of Lot 10. Therefore, appellant was a trespasser and the court correctly assessed against him the damages for tearing down the metal fence.

Appellant cites cases in his excellent brief which have applied or followed the principle that even though one owner has acquired additional land by adverse possession, a deed describing only the land described in the deed to the owner does not convey title to the additional land to the succeeding grantee. We shall not try to distinguish these cases fully from our holding in the instant case, but at least one point of dissimilarity will be noted.

In Haywood v. Hollingsworth, 255 Ala. 453, 51 So.2d 674, which appellant states "is clearly decisive of the issues involved in this appeal," the only evidence supporting any claim of adverse possession was inadmissible and could not be considered. Similarly, in Mims v. Alabama Power Co., 262 Ala. 121, 77 So.2d 648, the evidence fell "far short of that required to prove adverse possession." Also in Lay v. Phillips, 276 Ala. 273, 161 So.2d 477, we said: "The appellant therefore failed to establish by proof of the required degree his right by adverse possession to the land involved in the disputed strip." In McNeil v. Hadden, 261 Ala. 691, 76 So.2d 160, we held that equity was without jurisdiction to entertain a boundary line suit under Tit. 13, § 129, or Tit. 47, § 3, Code 1940, because the disputants were not coterminous owners. In Wilson v. Cooper, 256 Ala. 184, 54 So.2d 286, we reversed because there was no evidence to support the boundary line fixed by the court based upon appellee's claim of adverse possession to lands between the true government line and an old hedgerow.

We hold that under the undisputed facts of this case, the enclosed small triangular strip of land, having been held adversely to the paper title owner by appellees and their predecessors in title for more than thirty years, was correctly awarded to appellees in the suit to settle a boundary line dispute when appellant's predecessors in title had lost ownership because of adverse possession.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.