356 So.2d 625 (1978)
David L. WATSON and Zora Watson
v.
Grady L. PRICE, Jr., and Barbara C. Price, Ida Belle Young, Intervenor.
SC 2474.
Supreme Court of Alabama.
March 3, 1978.
Rehearing Denied April 7, 1978.
R. S. Hill, Jr., Robert S. Hill, III, Montgomery, for appellants.
D. Coleman Yarbrough, Montgomery, for intervenor.
JONES, Justice.
This appeal, from a decree fixing the boundary line between the parties, challenges the trial Court's application of the "tacking of adverse possession" principle to facts essentially undisputed. The question for this Court's decision may be stated in the context of Appellants' contention, thusly: The trial Judge erred in permitting Appellees to tack the period of adverse possession of their predecessor in title where such prior owner had acquired title by the requisite adverse possession period, but failed to include the disputed strip in the instrument of conveyance. Therefore, contend Appellants, because the disputed strip lies between the respective properties, the parties are not coterminous landowners and the ten-year statute (Tit. 7, § 828) is inapplicable.
Counsel for Appellants, in brief, aptly summarizes the factual background which they contend renders the "tacking" principle inapplicable.
*626 "Young [Appellee] testified that Dr. Sorrell [Young's predecessor in title] purchased the property in Section 32 in 1944 . . . and that the fence across the section line in Section 5 was in existence at that time. . . . If, as appellees contend, Dr. Sorrell held the land in Section 5 which is in dispute as an adverse possessor . . ., then he would have gained title to it by adverse possession in 1954, long before his contract of sale to Young in 1962 . . .."
Then, Appellants quote Mr. Justice Foster in Spires v. Nix, 256 Ala. 642, 644-645, 57 So.2d 89, 92 (1952):
"The trouble about the application of this theory [privity of possession, allowing tacking] to the status of complainant in this case is that it contemplates a situation where the prior claimant by adverse possession had not acquired the title to the property at the time of his conveyance to the complainant but only acquired a status of adverse possession which could lead to a title in complainant when tacked to her possession subsequently occurring. If the Robertsons had acquired the title by adverse possession at the time of the conveyance to complainant, that title could only pass to the complainant by a sufficient conveyance or by the status of adverse possession for the required length of time by the complainant subsequent to her conveyance from them."
Next, Appellant's brief correctly analyzes two subsequent cases thusly:
"In McNeil v. Hadden, 261 Ala. 691, 76 So.2d 160 (1954), this Court reversed and rendered a trial court's determination of a disputed boundary line. The opinion by Mr. Justice Lawson, with Chief Justice Livingston and Justices Stakely and Merrill concurring, stated that title to the disputed strip of land between Complainant and Respondent had been gained through adverse possession by Complainant's predecessor in title. Since the strip was not contained in the description of the conveyance to Complainant, the title to the strip was not conveyed and remained in Complainant's predecessor in title. Complainant and Respondent were, therefore, not coterminous land owners and the complaint should have been dismissed by the trial Court.
"The case of Carpenter v. Huffman, 294 Ala. 189, 314 So.2d 65 (1975), was frequently cited throughout the brief submitted for cross-complainants-appellees Young and Price. In that 1975 decision, this Court recognized the principles referred to above: "`We agree that ordinarily title to land gained by adverse possession must be included in the deed of conveyance in order for it to effectively pass to the grantee. But where, as here, the predecessors of Mrs. Huffman had not yet gained title to the disputed strip at the time of their conveyance to her but had possessed it adversely, the failure to include in the deed the description of the disputed strip would not of itself disallow tacking.' [294 Ala., at 191, 314 So.2d 65.]"
The Appellant concludes:
"Following the principle uniformly stated in the above cited cases and others, the disputed strip must have been in the description in the conveyance from Sorrell to Young in order for Sorrell's interest in that land to pass to Young. The uncontroverted evidence is that the disputed strip in Section 5 was not so conveyed. Sorrell only deeded land in Section 32. Therefore, by their own testimony, and the evidence presented, it is clear that cross-complaints received no interest in the disputed strip from Sorrell."
The difficulty lies not in our disagreement with the Appellant's analysis of the Court's holdings in Spires and McNeil; rather, we are constrained to disagree with the conclusion that the instant case is due to be reversed on the authority of these prior cases.
We will not indulge the pretense that our case law is without confusion or that the cases are readily reconcilable on any reasonable basis. That the tacking principle and its application are unclear is dramatized in Spires where the Court declined to allow tacking (though affirming a decree based on adverse possession on other grounds) *627 without any reference to whether the claimant was placed in possession of the disputed area by his immediate grantor.
Fortunately, however, subsequent case law has shed sufficient light on this problem for resolution of the instant case. Mr. Justice Merrill, speaking for the Court in Graham v. Hawkins, 281 Ala. 288, 202 So.2d 74 (1967), applied, in a similar factual context, the tacking principle:
"Since each grantee holding under [their predecessors in title] entered into possession of the whole area up to and including the fence, and each transferred his legal paper title to his successor who went into possession up to the fence, the deed, taken into consideration with such transference of possession, was sufficient to raise the privity essential to the tacking of all the possessions from and including [their predecessors in title] to the appellees." 281 Ala., at 292, 202 So.2d at 77.
Later, the Graham holding was summarized in Carpenter v. Huffman, 294 Ala. 189, 192, 314 So.2d 65 (1975):
"Thus, Graham stands for the applicable proposition that when the grantee is put into actual possession of the disputed land adversely held by his immediate grantor, sufficient privity is established to allow tacking."
In the instant case, the boundary line contended for by Appellees was well defined by a fence that ran generally parallel to the East/West section line described in the deeds of the respective parties. By the undisputed evidence, Dr. Sorrell was in possession of, and using, the property south of the section line up to the fence at the time he contracted to sell to Mrs. Young; and he placed Mrs. Young in actual possession of the entire property, including the now disputed strip. While Carpenter's summary of Graham may have been unnecessary to the holding in Carpenter, Graham stands as direct authority for our affirmance of the trial Court's decree allowing tacking under the facts of the instant case.
Because the application of the tacking principle is confusing under our present case law, we deem it appropriate to restate the principle and articulate the rationale for the rule. For the purpose of effecting title by adverse possession, where all the traditional elements are present, tacking of periods of possession by successive possessors is permitted against the co-terminous owner seeking to defeat such title, unless there is a finding, supported by the evidence, that the claimant's predecessor in title did not intend to convey the disputed strip. We hold that this rule should apply even though the conveying instrument contains no legal description of the property in question, and irrespective of the period for which the property was possessed by the present claimant's predecessor in title. We perceive no logical or practical reason why the application of the privity of possession rulepermitting tacking should be dependent upon whether the claimant's immediate grantor possessed the disputed property for more or less than the statutory period.
Close analysis of the problem reveals two basic reasons supportive of the rule.
1) If privity of possession were not recognizedthus rendering tacking impermissibleprior owners, who had possessed and used the questioned property adversely for the requisite period, but whose deed omitted any descriptive reference to such property, would retain title to property which ordinarily he obviously intended to convey. Absent tacking, the number of small, landlocked parcels of land throughout the statethe title to which in most cases would be impossible to tracewould stagger the imagination.
2) The second reason for the liberal tacking rule can be best illustrated in the context of the present case. If the late Dr. Sorrell acquired title by adverse possession of the disputed strip before he conveyed title to Mrs. Young; if his conveyance contained no description south of the section line; and if these circumstances defeat tacking, would not the following inquiry be pertinent? What are these parties doing fighting over property to which neither has *628 a legitimate claim? Are not the Sorrell heirs necessary parties to this action? Indeed, the McNeil Court, not permitting tacking, answered these questions by ordering the dismissal of the cause.
This is not to say that the prior owner, who conveys by the same legal description contained in the grant from his predecessor in title, necessarily conveys title to property gained by adverse possession. Unquestionably, among other options, he may retain title in himself; but any contest as to this issue should be between such grantor and his grantee, and not some third party.
Furthermore, nothing herein should be construed as changing, or otherwise modifying, in any way the right of the co-terminous owner, against whom adverse possession is claimed, from contesting any or all periods sought to be tacked in the same manner as if tacking were not involved. Tit. 7, § 828, Code; Powell v. Hopkins, 288 Ala. 466, 262 So.2d 289 (1972); and Montgomery v. Spears, 218 Ala. 160, 117 So. 753 (1928). Likewise, we are not to be understood as affecting the long-standing rule placing the burden of proof on the party asserting title by way of adverse possession. McCulloch v. Roberts, 290 Ala. 303, 276 So.2d 425 (1973); and Smith v. Persons, 285 Ala. 48, 228 So.2d 806 (1968).
AFFIRMED.
BLOODWORTH, FAULKNER, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
TORBERT, C. J., and MADDOX, J., dissent.
MADDOX, Justice (dissenting).
As the majority concedes, our case law in this area is confused, but the majority opinion today clearly expands the doctrine of Carpenter v. Huffman, 294 Ala. 189, 314 So.2d 65 (1975), to allow a person who pastures cattle up to a fence which zigs and zags[1] from post to trees, on rural farm land to get the title to the land if his neighbor does not object to his use of the land for a period of ten years.
As I understand the law of adverse possession, all presumptions and intendments are favorable to the title, and possessions are not presumed to be hostile. Knowles v. Golden Stream Fishing Club, Inc., 331 So.2d 253 (Ala.1976).
In any event, the acts of adverse possession of this rural property falls far short of the possessory acts upheld in Graham v. Hawkins, 281 Ala. 288, 202 So.2d 74 (1967), and Carpenter v. Huffman, supra.
To establish adverse possession against the title owner, our cases hold that the evidence should be clear and convincing. Even assuming that Dr. Sorrell gained title to the disputed strip by adverse possession (I think the evidence shows that the fence here was nothing more than a pasture fence), Dr. Sorrell did not transfer title to it to Ms. Young.
The majority correctly points out, by quoting from Carpenter v. Huffman, that "ordinarily title to land gained by adverse possession must be included in the deed of conveyance."
*629 In Carpenter, as the case points out, the predecessors of Mrs. Huffman had not gained title to the disputed strip at the time they conveyed to Mrs. Huffman. Also, Carpenter involved a lot which had been "enclosed" and permanent improvements had been placed on the disputed strip. I believe the majority falls into grievous error to equate the possessory acts in this case with those in Carpenter or Graham.
In Graham v. Hawkins, 281 Ala. 288, 202 So.2d 74 (1967), a case involving a city lot, this Court did adopt a principle set out in 3 Am.Jur.2d, Adverse Possession, § 65, p. 156; which reads as follows:
"`* * * Thus, where a person having title by deed to a lot or tract of land described in the deed also has inclosed with it and is in possession of adjoining land to which he has no record title, and conveys the land by the description in the deed and delivers with it possession of the entire inclosure, the continuity of possession will not be broken, and the two possessions may be joined and considered as one continuous possession. So, where a purchaser of land incloses and occupies a tract outside his boundaries, believing it to be included therein, and in that belief conveys to another by the same description, intending that the grantee shall take the whole inclosed area, his possession may be tacked to that of his grantee. * * *'"
However, in Graham, this Court did not overrule several prior cases, but distinguished them, as follows:
"Appellant cites cases in his excellent brief which have applied or followed the principle that even though one owner has acquired additional land by adverse possession, a deed describing only the land described in the deed to the owner does not convey title to the additional land to the succeeding grantee. We shall not try to distinguish these cases fully from our holding in the instant case, but at least one point of dissimilarity will be noted.
"In Haywood v. Hollingsworth, 255 Ala. 453, 51 So.2d 674, which appellant states `is clearly decisive of the issues involved in this appeal.' the only evidence supporting any claim of adverse possession was inadmissible and could not be considered. Similarly, in Mims v. Alabama Power Co., 262 Ala. 121, 77 So.2d 648, the evidence fell `far short of that required to prove adverse possession.' Also in Lay v. Phillips, 276 Ala. 273, 161 So.2d 477, we said: `The appellant therefore failed to establish by proof of the required degree his right by adverse possession to the land involved in the disputed strip.' In McNeil v. Hadden, 261 Ala. 691, 76 So.2d 160, we held that equity was without jurisdiction to entertain a boundary line suit under Tit. 13, § 129, or Tit. 47, § 3, Code 1940, because the disputants were not coterminous owners. In Wilson v. Cooper, 256 Ala. 184, 54 So.2d 286, we reversed because there was no evidence to support the boundary line fixed by the court based upon appellee's claim of adverse possession to lands between the true government line and an old hedgerow."
In Wilson v. Cooper, 256 Ala. 184, 54 So.2d 286 (1951), this Court said:
"The principles of law here involved are stated in the case of Alford v. Rodgers, 242 Ala. 370, 6 So.2d 409, 410 as follows:
"`It is of course well understood that as between respective claimants a boundary line may be established by adverse possession by which one party may thus acquire land extending to that line which would not otherwise have been his, and thereby may thus cause a strip of land to be attached to his holdings. Brantley v. Helton, 224 Ala. 93, 139 So. 283; Branyon v. Kirk, 238 Ala. 321, 191 So. 345. See Code of 1940, Title 7, section 828, page 713, where the cases are cited. This statute does not prescribe a limitation on the right acquired by the twenty year prescription period of adverse possession. Jones v. Rutledge, 202 Ala. 213, 80 So. 35; Smith v. Smith, 213 Ala. 670, 106 So. 194; Earnest v. Fite, 211 Ala. 363, 100 So. 637; Stearnes v. Woddall, 218 Ala. 128, 117 So. 643.
*630 "`And if a conveyance of his holding is sufficient to include the strip thus acquired, it will pass under it. But what is the result if the description in the conveyance is not sufficient to include this acquired strip? That is our question here.
"`It is of course true that no act or even agreement of the parties can take the land out of section 11 and put it in section 14. And while the boundary line between adjacent land owners may be fixed and changed by agreement or by adverse possession, they cannot relocate a section line as surveyed by the Government surveyors. So that if the land was in section 11 as thus surveyed, it has so remained and still is thus situated. And the parties both treat it so. It follows that a conveyance of land described as in section 14 does not on its face include land in section 11. But can it be treated as an appurtenant to the land in section 14, so as to pass with a conveyance of it?
"`This question has been treated by the authorities which declare that as a rule a grantee can acquire by his deed only the land described in it, and does not acquire by way of appurtenant land outside such description. But that when a boundary line is mobile, such as a water course though it may shifta deed conveys the land up to such shifting line as it does up to a fixed line. Jones v. Johnston, 18 How. 150, 15 L.Ed. 320.

* * * * * *
"`And so when the land is described by Government numbers, the deed does not purport to convey an area outside of such described land. For in Humphreys v. McKissock, 140 U.S. 304, 11 S.Ct. 779, 781, 35 L.Ed. 473, it was said, quoting from Woodhull v. Rosenthal, 61 N.Y. 382, 390, that "land can never be appurtenant to other land, or pass with it as belonging to it. All that can be reasonably claimed is that the word `appurtenance' will carry with it easements and servitudes used and employed with the lands for whose benefit they were created. Even an easement will not pass unless it is necessary to the enjoyment of the thing granted."
"`This does not conflict with the principle that when shifting boundaries gradually change, the tract embraces land thereby added.'"
In McNeil v. Haddon, 261 Ala. 691, 76 So.2d 160 (1954), this Court reversed the trial court for allowing a party to claim title to a disputed strip, when the evidence showed that the party's predecessors in title had gained title to the strip and had not transferred the title to the grantee. This Court said:
"It is established that: `If two coterminous proprietors agree on a boundary line, and each occupies to its location, the possession is presumed adverse, and after ten years has the effect of fixing such line as the true one. Turner v. DePriest, 205 Ala. 313, 87 So. 370; Copeland v. Warren, 214 Ala. 150, 107 So. 94; Gunn v. Parsons, 213 Ala. 217, 104 So. 390; Mink v. Whitfield, 218 Ala. 334, 118 So. 559; Smith v. Harbaugh, 216 Ala. 202, 112 So. 914. If a coterminous landowner holds actual possession of the disputed strip under a claim of right openly and exclusively for a continuous period of ten years, believing that he is holding to the true line, he thereby acquires title up to that line, even though the belief as to the correct location originated in a mistake, and it is immaterial what he might or might not have claimed had he known he was mistaken. Smith v. Bachus, 201 Ala. 534, 78 So. 888; Hoffman v. White, 90 Ala. 354, 7 So. 816; Hopkins v. Duggar, 204 Ala. 626, 87 So. 103; Shepherd v. Scott's Chapel, 216 Ala. 193, 112 So. 905.' Smith v. Cook, 220 Ala. 338, 341, 124 So. 898, 900. See Treadaway v. Hamilton, 221 Ala. 479, 129 So. 55; Clarke v. Earnest, 224 Ala. 165, 139 So. 223; Guy v. Lancaster, 250 Ala. 226, 34 So.2d 10.
"As heretofore shown, the boundary was fixed by the trial court as contended for by the complainant, but the evidence in the record before us supports no conclusion other than that the line so fixed is not the section line properly surveyed. It is apparent from the decree that the trial court based its action on its findings from the evidence and from personal inspection of the premises that there is such a line as claimed by complainant which has been in *631 existence for many, many years; that the predecessors in title of the complainant and the respondents as far back as the original homesteaders had agreed on that line as the boundary and that under such agreement complainant's predecessors in title held actual possession up to the agreed line under a claim of right openly and exclusively for a continuous period much in excess of ten years, believing that they were holding to the true line.
"We will not relate the evidence upon which the trial court acted. It has been examined with care and we are clear to the conclusion that it supports the findings of fact to which we alluded above. Moreover, as mentioned before, the trial court in accordance with permissible practice, made a personal inspection of the property before making its finding of fact; hence, the decree is reviewed here as if it were a verdict of a jury. Mutual Service Funeral Homes v. Fehler, 257 Ala. 354, 58 So.2d 770; Monroe Bond & Mortgage Co. v. State, 254 Ala. 278, 48 So.2d 431. See Fuller v. Blackwell, 246 Ala. 476, 21 So.2d 617; Watt v. Lee, 238 Ala. 451, 191 So. 628.
"The respondents' claim to the land which lies east of the line consisting of the settlement road and hedgerow and west of the section line is based entirely on the description contained in the deed which they received in 1950. But respondents received no title to the strip of land under that deed, for their grantors were without title thereto, since the predecessors in title of complainant had previously acquired title by adverse possession.
"The complainant is in the same predicament. He has no title to the strip of land in dispute because it is not within the description of the deed which he obtained in 1946 from Mrs. C. D. Smith and he has not had adverse possession for the required period. The description in the last-mentioned deed covers only the south one-half of the southwest one-quarter of Section 32 and it is without conflict in the evidence that the strip of land in dispute is west of the section line dividing Sections 31 and 32.
"The title to the disputed strip of land having been in Mrs. C. D. Smith at the time of her conveyance to complainant, the title thereto could pass to the complainant only by a conveyance wherein the said strip is sufficiently described or by the status of adverse possession for the required length of time by the complainant subsequent to his conveyance from Mrs. Smith. Alford v. Rodgers, 242 Ala. 370, 6 So.2d 409; Haywood v. Hollingsworth, 255 Ala. 453, 51 So.2d 674; Wilson v. Cooper, 256 Ala. 184, 54 So.2d 286; Spires v. Nix, 256 Ala. 642, 57 So.2d 89; Holoway v. Carter, [261] Ala. [51,] 72 So.2d 728. See `Title by Adverse Possession,' by the Hon. Shuford B. Smyer, of the Birmingham Bar. The Alabama Lawyer, Vol. 14, pp. 352, 360.
"So the conclusion is inescapable that the complainant and the respondents are not coterminous owners. Their lands, according to the record before us, are separated by the disputed strip, title to which is in complainant's grantor or her successors."
The majority does not attempt to distinguish McNeil v. Haddon and Wilson v. Cooper, and cases similar to them, which I believe are almost identical to the facts here. I think the principles announced in McNeil and Wilson apply here. In fact, in those cases, there were hedgerows, here, only a pasture fence which zigged and zagged.
TORBERT, C. J., concurs.
NOTES
[1] The majority's statement that the fence "ran generally parallel to the East/West section line described in the deeds" is not supported by the record. Not only does the fence not run "generally parallel," at one point, the fence crosses the survey line. The surveyor testified about its meanderings:

"Q All right, sir. I'll ask you if you recall that I was the one, I believe, who called you and requested that you make that map showing that, did I not?
"A That's correct. (Referring to Complainant's exhibit no. 2).
"Q And at that time I believe you inquired as to whether or not we wanted the fence to truly zig-zag and show the true fence, or show it every three hundred feet; is that correct?
"A That was our understanding.
"Q Yes, sir.
"A Because
"Q Because I believe you stated at that time that if we're going to show every zig-zag in the fence that it would probably be a long drawn out survey; is that correct?
"A The map would be rather hard to handle, it would be too big to handle.
"Q And so then while this looks as a smooth line running along south there, actually as the fence runs, it does not run that smoothly; is that correct?
"A That's correct."