This is an appeal from a judgment in the Circuit Court of Lawrence County determining a boundary line between two coterminous landowners in favor of plaintiff, Bailey Nichols. We reverse.
This case involves a boundary dispute between plaintiff, Bailey Nichols, and defendant, Danny Mardis, over Nichols's south boundary and Mardis's north boundary. The facts are undisputed by the parties. The disputed strip is approximately thirty-five feet wide and runs the length of the boundary between the two tracts. In 1974 or 1975, Nichols purchased twenty acres from his father, who had purchased the same from William R. Mardis, Danny's brother, in 1969. Danny Mardis owned the *Page 977 
land on both sides of Nichols's property. He acquired the twenty acres adjacent to Nichols's south side from his father, Jack Mardis, who had inherited the property from his father in 1928. Danny received his record title in 1974, pursuant to a 1966 deed designed to take effect upon the death of his last surviving parent. There was testimony, however, indicating that Danny had been put in possession of the property as early as 1956, that he had worked the property since that time, and that he had paid taxes on the property prior to 1966.
Mardis maintained that the boundary in dispute was, and always had been, a fence built in 1929 or 1931. Mr. Lee Oliver, a seventy-two year old native of Lawrence County, testified that he helped build the fence, which, at that time, was intended to be the line between two twenty-acre tracts that "Grandpa" Mardis had given to his children, Melvina and Jack (Danny's father). Mr. Oscar Owens, an eighty-two year old resident, testified that many years ago, while picking blackberries on the property with Danny's father, he had inquired about the boundary. In response, the older Mardis had pointed out the fence and stated that it was the line. Other witnesses who had been aware of the fence for at least twenty-five years or more testified that the fence was recognized by surrounding landowners and the community as a boundary line fence.
Nichols, however, based his boundaries on a 1978 survey and erected an electric fence along the survey lines. Mardis then notified Nichols that he would have to move that portion of the fence along Mardis's north boundary because it was on his land. Mardis did not contest the fence along Nichols' northern boundary. Nichols responded that he wanted his twenty acres and that Mardis would have to move his line since he owned the land on both sides of Nichols. When Nichols continuously refused to remove his fence and to recognize the old line fence as the true boundary, Mardis tore down the new fence and retook possession up to the old fence.
On February 28, 1979, Nichols filed a complaint alleging a boundary dispute. Mardis counterclaimed, alleging that the boundary was marked by an existing line fence. A non-jury trial resulted in a judgment for Nichols. Mardis appeals.
The sole issue that we must determine is whether the judgment of the trial court, establishing the survey line as the true boundary, was contrary to the weight of the evidence and the law. The following principles, recognized and followed by this Court in determining boundary line cases, are instructive in the present dispute.
In Carpenter v. Huffman, 294 Ala. 189, 314 So.2d 65 (1975), Justice Jones summarized the applicability of our adverse possession statute, Code 1975, § 6-5-200, to boundary disputes, as follows:
 The three alternative prerequisites 1) deed or other color of title, 2) annual listing of land for taxation, or 3) title by descent case or devise from a predecessor, therefore, are not necessary to sustain a claim to title by a coterminous owner. Lay v. Phillips, 276 Ala. 273, 161 So.2d 477 (1964); Sylvest v. Stowers, 276 Ala. 695, 166 So.2d 423
(1964). That is to say, although the claimant is relieved of these three alternative conditions prescribed by [§ 6-5-200], he may still acquire title by the exercise of adverse possession for a period of ten years. Cambron v. Kirkland, 287 Ala. 531, 253 So.2d 180 (1971); Lay v. Phillips, supra; McNeil v. Hadden, 261 Ala. 691, 76 So.2d 160 (1954). However, the requirements that possession be open, notorious, hostile, continuous and exclusive are still applicable. Thompson v. Odom, 279 Ala. 211, 184 So.2d 120 (1966).
In an earlier decision, Sylvest v. Stowers, 276 Ala. 695,166 So.2d 423 (1964), this Court reversed the decree of the trial court establishing the survey line as the true boundary. In reversing, the Court reemphasized, as set out below, the intent of the landowner as a controlling factor in boundary determinations.
In Salter v. Cobb, 264 Ala. 609, 88 So.2d 845 (1956), we said: *Page 978 
 As between coterminous landowners where a question of boundary line is presented, when parties agree upon the location of a line fence or one of them proceeds to enclose his property and erects a fence intended as a line fence and holds actual and exclusive possession to it as such, his possession is adverse and if continued for ten years ripens into title. The controlling fact is one of intention and if there is an inference arising from the evidence that there was an intention on the part of the complainant to hold and enjoy the property up to the line claimed by the complainant as the true dividing line between the property, with the assent or apparent recognition of it as such on the part of respondent and his predecessors in title for the stated period, this is sufficient to discharge the complainant's burden of proof. And if the possessor considered and claimed the land up to the established line as her own, the possession is hostile even though she is claiming more than she owns and claims by mistake of fact. Though the established division line might have been erroneous in fact, if it may be inferred that the fence was believed to be the true line and the claim of ownership was to the fence, the possession is adverse and "`does not originate in an admitted possibility of a mistake.'" [Emphasis added.]
This court has made it abundantly plain that one does not have to be a willful landgrabber or dishonest in order to acquire title by adverse possession. We quote from Brantley v.Helton, 224 Ala. 93, 139 So. 283 (1932):
 Adverse possession as between adjoining landowners, where a question of boundary line is presented, has been many times declared by this court. When the parties agree upon the location of a line fence, or one of them proceeds to inclose his property, and erects a fence intended as a line fence, holds actual and exclusive possession to it as such, his possession is adverse, and, if continued for ten years, ripens into title.
. . . . .
 The controlling fact is one of intention. The mere fact that a mistake was made in locating the boundary, and there was never an intention to claim the property of another, does not negative adverse possession. Such a rule would make adverse possession to depend upon bad faith.
 Was there an intention to fix a dividing line, each to have the enjoyment of his own property, and was possession taken and held accordingly, each claiming the property held as his own, because he considered it his own? If so, the possession is adverse. Of course, adverse possession may arise from boldly and knowingly taking the property of another, or taking it regardless of whether he believes it is his, thus ousting the true owner, and holding in hostility to him.
 But in law a hostile possession is not limited to any such case. It is hostile when held as his own, claimed as his own, whether by mistake or willfully. [Emphasis added.]
Furthermore, this Court has repeatedly recognized that a fence is an outstanding symbol of possession. Kubiszyn v.Bradley, 292 Ala. 570, 298 So.2d 9 (1974); Graham v. Hawkins,281 Ala. 288, 202 So.2d 74 (1967). In Hinds v. Slack, 293 Ala. 25, 299 So.2d 717 (1974), we stated: "Where one coterminous owner erects a line fence and holds actual and adverse possession to it for a continuous period of ten years, he obtains title to the property enclosed by his fence." See also,W.T. Smith Lumber Co. v. Cobb, 266 Ala. 146, 94 So.2d 763
(1957).
Appellant, Mardis, contends that the fence, erected by 1931 as a line fence, became the true and exclusive line ten years later in 1941. This contention is supported by precedent as expressed in Sylvest v. Stowers, supra:
 If a coterminous landowner holds actual possession of a disputed strip under a claim of right openly and exclusively for a continuous period of ten years, believing that he is holding to the true line, he thereby acquires title up to that line, even though the belief as to the correct location originated in a mistake, and it is *Page 979 
immaterial what he might or might not have claimed had he known he was mistaken. Lay v. Phillips, 276 Ala. 273, 161 So.2d 477; McNeil v. Hadden, 261 Ala. 691, 76 So.2d 160, and cases there cited; see Treadaway v. Hamilton, 221 Ala. 479, 129 So. 55.
Appellee, Nichols, however, contends that because Mardis's deed does not contain a description of the disputed property, Mardis cannot rely upon the adverse possession of his predecessor in title in order to gain entitlement to the disputed strip. Nichols further contends that because Mardis did not acquire record title until 1974 and, therefore, has not satisfied the ten-year statutory adverse possession period under claim of right, the judgment of the trial court is due to be affirmed. We disagree. This Court's holding in Watson v.Price, 356 So.2d 625 (1978), as set out in pertinent part, is dispositive of this issue:
 For the purpose of effecting title by adverse possession, where all the traditional elements are present, tacking of periods of possession by successive possessors is permitted against the coterminous owner seeking to defeat such title, unless there is a finding, supported by the evidence, that the claimant's predecessor in title did not intend to convey the disputed strip. We hold that this rule should apply even though the conveying instrument contains no legal description of the property in question, and irrespective of the period for which the property was possessed by the present claimant's predecessor in title.
The rule established in Watson is based upon the rationale that "[t]he transfer of the possession alone is sufficient to create the privity for this purpose [tacking of adverse possession periods], and written evidence of the transfer is not necessary when the property is held by the transferee under the claim of the first entryman." Holt v. Adams, 121 Ala. 664, 25 So. 716
(1898).
In the instant case, the evidence clearly established that the old fence had been in existence at least twenty-five years — at most fifty years; that the fence was generally recognized by surrounding landowners and the community as a line fence; that Danny Mardis's predecessor in title had expressed his belief and/or intent that the fence marked the true boundary line; that this intent had been evident from the origin of the fence; and that both generations of Mardises consistently worked the property — cultivated and pastured it — up to the fence.
The record further indicates that Jack Mardis — even prior to the conveyance — had put Danny into actual possession of the property all the way up to the fence. Basing our opinion on the undisputed facts of this case, therefore, we hold, consistent with Graham v. Hawkins, supra, that because Danny Mardis "entered into possession of the whole area up to and including the fence, . . . the deed, taken into consideration with such transference of possession, was sufficient to raise the privity essential to the tacking" of Danny's father's claim of title by adverse possession to Danny's own claim of title to the disputed area.
Accordingly, the judgment of the trial court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and SHORES, EMBRY and ADAMS, JJ., concur.