These appeals arise out of a boundary dispute between coterminous landowners. The trial court ruled that adverse possession had been established. We reverse.
In 1951, G.W. Kelly, the original owner, sold part of his land to his son, Arlis Kelly. The deed was not executed until 1955. G.W. Kelly died in 1977, and the remaining real estate was sold to Arthur Ferguson. In 1980, Amos Cockrell and his wife, Bertie, who is G.W. Kelly's daughter, bought the land from Ferguson.
Arlis claims that when he purchased his property in 1951 and prior to the execution of the deed in 1955, his father agreed upon a conditional boundary line, then marked by wooden stakes. The purpose of this line was to ensure that one of two barns would be located on Arlis's property. The testimony becomes conflicting when we reach the question of acknowledgement of the line. Some witnesses knew of the line and its purpose, and others denied knowledge of its existence. No fence was erected and the line is described as "conditional" and "agreed." The boundary remained undisputed until the summer of 1981, when Arlis told Cockrell to get off his land. The Cockrells brought suit, and the court held in favor of Arlis Kelly on the theory of adverse possession.
The issue before us is whether the adjudication of the trial court, establishing the conditional line as the true boundary, was contrary to the weight of the evidence and the law. This court recognizes the principle that a decree establishing a boundary line between coterminous lands on evidence submitted ore tenus is presumably correct. Salter v. Cobb, 264 Ala. 609,88 So.2d 845 (1956). The record before us, however, shows material facts which we find to be contrary to the judgment of adverse possession. The line in question was never marked by a fence, but merely indicated by stakes. Arlis and G.W. Kelly used the property together to graze cattle until 1968. Kelly and his father cannot hold the same property adversely to each other at the same time, since it is necessary that the possession be exclusive as well as hostile and continuous.Lucas v. Kirk, 275 Ala. 20, 151 So.2d 744 (1963). In 1972, Arlis paid for repairs to the barn on the disputed property; however, until his father's death *Page 624 
in 1977, the barn was used by various family members, including Cockrell. Possession cannot be presumed to be hostile, and presumptions and intendments are favorable to the title.Stewart v. Childress, 269 Ala. 87, 111 So.2d 8 (1959). Furthermore, sporadic acts of ownership are insufficient to show adverse possession. Lucas v. Kirk.
This Court has analyzed the applicability of our adverse possession statute, Code 1975, Section 6-5-200,[1] to cases of coterminous landowners in Mardis v. Nichols, 393 So.2d 976
(Ala. 1981). In the case of coterminous landowners, possession must still present the classic characteristics of adverse possession. In other words, possession must be open, notorious, hostile, continuous, and exclusive.
The general rule is that a fence is an "outstanding symbol of possession" and the case at bar is easily distinguished fromMardis, by the absence of a fence. In Mardis, the evidence showed that the fence had been in existence for over 25 years and was recognized by third parties as a line fence. The prerequisite intent to fix a dividing line may not be presumed.
On the occasion of the settlement of G.W. Kelly's estate, Arlis requested that the property on which the two barns were located be included in his share. Part of that property is in dispute in the instant case. Later, Arlis attempted to buy the same property from Ferguson, who sold the land in its entirety to Cockrell.
A careful consideration of the record, along with briefs submitted, convinces us that the elements of adverse possession were not proven.
REVERSED AND REMANDED.
TORBERT, C.J., and ALMON, EMBRY and ADAMS, JJ., concur.
[1] Code 1975, Section 6-5-200, reads in part:
"(a) Adverse possession cannot confer or defeat title to land unless:
"(1) The party setting it up shall show that a deed or other color of title purporting to convey title to him has been duly recorded in the office of the judge of probate of the county in which the land lies for 10 years before the commencement of the action;
"(2) He and those through whom he claims shall have annually listed the land for taxation in the proper county for 10 years prior to the commencement of the action if the land is subject to taxation; or
"(3) He derives title by descent cast or devise from a predecessor in the title who was in possession of the land."