BRYAN, Judge.
The plaintiffs Mozelle M. Sexton, Sarah S. Lowe, and James M. Lowe appeal a judgment establishing the boundary line between their property and the property of the defendant Cheryl C. Wagnon. We affirm.
Sexton and the Lowes are the holders of record title to tract 10 (“tract 10”) of the J.T. Noojin Subdivision in Etowah County. Wagnon is the holder of record title to tract 9 (“tract 9”) of that subdivision. Tract 10 lies adjacent to, and east of, tract 9.
In 2005, Sexton and the Lowes sued Wagnon, seeking a determination of the location of the boundary line between the parties’ properties. Sexton and the Lowes contended that the location of the boundary line was depicted on a survey (“the survey line”) prepared for them in 2005. Wagnon contended that the boundary line was located where her possession and the possession of her predecessor in title (“the possession line”) had established it. The southern and northern termini of the survey line and the possession line are the same. However, whereas the survey line runs in a straight northeasterly line from its southern terminus to its northern terminus, the possession line first runs in a straight northeasterly line from the southern terminus of the survey line to a point marked by a metal bed rail that had been driven in the ground, which is an unspecified distance east of the survey line; then runs in a straight northwesterly line to a point marked by a galvanized pipe, which is located on the survey line approximately midway between the southern and northern termini of the survey line; and then runs northeasterly along the survey line to its northern terminus. Thus, a triangle is *894 formed by (1) the segment of the survey line connecting its southern terminus and the galvanized pipe, (2) the segment of the possession line connecting the southern terminus of the survey line and the bed rail, and (3) the segment of the possession line connecting the bed rail and the galvanized pipe. Within that triangle is a gore of land (“the gore”).
The case proceeded to trial before the trial judge, sitting without a jury, and the trial judge received evidence ore tenus. Therefore, in reviewing the trial judge’s judgment, we must view the evidence in the light most favorable to the prevailing party, see Diggs v. Diggs, 910 So.2d 1274, 1275 (Ala.Civ.App.2005), and Driver v. Hice, 618 So.2d 129, 131 (Ala.Civ.App.1993), which, in this case, is Wagnon. Viewed in that manner, the evidence established the following material facts.
Wagnon’s father was deeded tract 9 in 1973. That same year, Wagnon’s father employed a surveyor to survey tract 9 and to mark its boundaries on the ground. The surveyor marked the line he determined to be the boundary line between tract 9 and tract 10 with stakes. Approximately six months later, Wagnon’s father drove a portion of an old metal bed rail into the ground beside one of the stakes the surveyor had used to mark the boundary line between tract 9 and tract 10. The bed rail was located approximately 200 to 300 feet from the southern terminus of the boundary line between tract 9 and tract 10. Wagnon’s father drove a galvanized pipe into the ground beside another stake the surveyor had used to mark the boundary line between tract 9 and tract 10. The galvanized pipe was located approximately 300 to 400 feet northwest of the bed rail and approximately midway between the southern and northern termini of the boundary line between tract 9 and tract 10. Over the years, the surveyor’s stakes disappeared, but the bed rail and the galvanized pipe remained where Wagnon’s father had driven them into the ground until 2005. Wagnon’s father treated the bed rail and the galvanized pipe as landmarks marking the boundary line between tract 9 and tract 10.
In 1980 or 1981, Wagnon’s father placed a mobile home a short distance southwest of the bed rail and approximately 10 feet west of the straight line running from the southern terminus of the boundary line between tract 9 and tract 10 to the bed rail. In 1982 or 1983, Wagnon’s father marked the straight line running from the southern terminus of the boundary line to the bed rail by planting three poplar trees along that line. In order to locate the trees along that line, Wagnon’s father ran a string from the southern terminus of the boundary line to the bed rail. He then planted the three trees along the line formed by the string. The line of poplar trees was located south of the mobile home.
Soon after Wagnon’s father planted the three poplar trees, Wagnon married, and she and her husband began living in the mobile home. From that time on, either Wagnon or her father mowed the grass in the gore all the way up to the possession line every one or two weeks. No one other than Wagnon, her husband, and her father has used the gore since 1973. In 1996, Wagnon’s father conveyed tract 9 to her. The deed did not purport to convey to her any part of tract 10 that her father may have possessed adversely.
*895 The owners of tract 10 never gave their permission for Wagnon’s father or Wagnon and her husband to use the gore. In 2005, a surveyor prepared a survey of tract 10 for Sexton and the Lowes. That survey depicted the survey line and indicated that the gore was located east of the survey line. Sexton and the Lowes then demanded that Wagnon cease using the gore and recognize the survey line as the boundary line between the parties’ properties. Wag-non ceased some of her use of the gore but refused to cease using it altogether, and she insisted that the possession line, rather than the survey line, is the boundary line between the parties’ properties.
After the trial, the trial judge viewed the ground where the survey line and the possession line are located. Thereafter, the trial judge entered a final judgment in which he found that Wagnon had acquired title to the gore by adverse possession and, therefore, that the possession line is the true boundary line between the parties’ properties. Sexton and the Lowes appealed to the supreme court, and the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975, transferred the appeal to this court.
On appeal, Sexton and the Lowes argue that the trial court erred in finding that Wagnon owned the gore by virtue of adverse possession because, Sexton and the Lowes say, (1) Wagnon did not hold title to tract 9 for 10 years, the period required to establish adverse possession of a coterminous landowner’s property,[1] before Sexton and the Lowes filed this action; and (2) Wagnon was not entitled to tack her father’s adverse possession of the gore because the deed by which her father conveyed tract 9 to her did not purport to convey the gore to her.
Wagnon concedes that she did not hold title to tract 9 for 10 years before Sexton and the Lowes filed this action; however, she argues that she is entitled to tack her father’s adverse possession of the gore despite the fact that her deed does not purport to convey the gore to her. We agree.
In Watson v. Price, 356 So.2d 625, 627 (Ala.1978), the Alabama Supreme Court stated:
“Because the application of the tacking principle is confusing under our present case law, we deem it appropriate to restate the principle and articulate the rationale for the rule. For the purpose of effecting title by adverse possession, where all the traditional elements are present, tacking of periods of possession by successive possessors is permitted against the coterminous owner seeking to defeat such title, unless there is a finding, supported by the evidence, that the claimant’s predecessor in title did not intend to convey the disputed strip. We hold that this rule should apply even though the conveying instrument contains no legal description of the property in question, and irrespective of the period for which the property was possessed by the present claimant’s predecessor in title.”
(Emphasis added.)
In the case at bar, Wagnon introduced clear and convincing evidence establishing that her father exercised possession of the gore under a claim of right for more than 10 years; that his possession of the gore was actual, exclusive, open, notorious, and hostile; and that, in addition to conveying tract 9 to Wagnon, he delivered *896 possession of the gore to her.[2] Under Watson v. Price, supra, that evidence established a rebuttable presumption that Wagnon was entitled to tack the period her father adversely possessed the gore despite the absence from her deed of language purporting to convey the gore to her. Sexton and the Lowes did not introduce any evidence to rebut that presumption. Therefore, the trial court did not err in finding that Wagnon had adversely possessed the gore.
Sexton and the Lowes make several other arguments for the first time in their reply brief. However, “[an appellate court] does not address issues raised for the first time in a reply brief.” Byrd v. Lamar, 846 So.2d 334, 341 (Ala.2002). Accordingly, we affirm the trial court’s judgment.
AFFIRMED.
MURDOCK, J., concurs.
CRAWLEY, P.J., and THOMPSON and PITTMAN, JJ., concur in the result, without writing.

. See Johnson v. Brewington, 435 So.2d 64, 65 (Ala.1983) ("The coterminous owners in a boundary dispute 'may alter the boundary line between their tracts of land ... by adverse possession for ten years.' ” (quoting Kerlin v. Tensaw Land & Timber Co., 390 So.2d 616, 618 (Ala.1980))).

. Although Sexton and the Lowes argue that Wagnon's father did not adversely possess the gore because he did not erect a fence or post signs to mark where the possession line deviated from the survey line, they cite no legal authority for the proposition that the erection of a fence or the posting of signs was a sine qua non of adverse possession by Wagnon’s father. “ ' "[WJhere an appellant fails to cite any authority for an argument, this [c]ourt may affirm the judgment as to th[at] issue[ ], for it is neither this [c]ourt's duty nor its function to perform all the legal research for an appellant.” ' ” Mantiply v. Mantiply, 951 So.2d 638, 653 (Ala.2006) (quoting Spradlin v. Birmingham Airport Auth., 613 So.2d 347, 348 (Ala.1993), quoting in turn Sea Calm Shipping Co. v. Cooks, 565 So.2d 212, 216 (Ala.1990)).