ALMON, Justice.
This case involves a boundary line dispute and the question of adverse possession of a disputed strip of land. The disputed strip is between an established quarter section line, which is one of the boundaries specified in the respective deeds to both parties, and an old hedgerow, which appellees claim is the correct boundary line. The trial judge, after hearing the evidence ore tenus, found that appellees had claimed to own to the hedgerow for more than ten years and had held actual, open and exclusive possession to the hedgerow continuously for more than ten years. He, therefore, concluded that the boundary line was located at the hedgerow. Prom the final judgment of the trial court, appellant brings this appeal.
The property of Maudie E. Clark, one of the appellees, lies south of the property of James G. (Ben) Hagler, the appellant.
In 1905 Henry Clarence May owned the property now owned by the appellees. A Mr. Darden owned the property now owned by the appellant. Darden and May put up a fence seventy and seven-tenths (70.7) feet north of the government survey line. The area between the government survey line and the old fence and hedgerow is the area in dispute.
Appellee Clark bought her property in 1946 from Dr. J. E. Shirley. She testified that at the time of purchase, the old fence and hedgerow were pointed out to her as the north line and that the hedgerow remained undisturbed as the dividing line until about 1971 when appellant took it down. Appellee Clark put a fence back where the old hedgerow had been located. The fence remained until 1973 when appellant again removed the fence, and this suit by appel-lees resulted.
Appellees went into possession of the property in 1946, occupying up to the hedgerow. They farmed the property for a while and then grazed cattle on it.
Appellant bought the property north of the appellees in about 1950 or 1951. He testified that when he first bought the property he bought it as “a forty” without paying much attention to the boundary lines. His deed named the quarter lines as boundary lines but only the north line going east and west had been surveyed. Shortly after he bought the property, it was brought to his attention that the boundary lines as he knew them were incorrect. This was later confirmed when a Mr. Hendrix surveyed some of the property in the area. Mr. Hendrix testified that the survey demonstrated that each parcel had been moved north by using fences and roads a long time ago. He further testified that if the old hedgerow was established as the line for the appellees, they would lose a corresponding amount of land on the south side of their property. The survey had shown that if the appellees’ land started at the section on the north and ran south, the south corner would be over in somebody else’s garage fifteen feet or more.
The evidence revealed that at some point after appellant became aware of the boundary dispute, he approached appellee Clark and discussed the situation with her and her husband. At this time appellant also owned the property to the south of the appellees. He offered to swap the disputed *329 strip on the north end of the appellees’ property in exchange for an equal sized strip on the south end of the appellees’ property. The appellees declined the offer.
According to the testimony, the next time the boundary lines were discussed was in 1965. At that time appellee Clark asked appellant for a quitclaim deed to the disputed area and appellant refused to give her one.
Appellant maintains that the evidence in this case and the law of Alabama do not support the ruling of the trial court that appellee acquired title to the disputed tract of land by holding actual and exclusive possession for more than ten years. We disagree.
“If a coterminous landowner holds actual possession of a disputed strip under a claim of right openly and exclusively for a continuous period of ten years, believing that he is holding to the true line, he thereby acquires title up to that line, even though the belief as to the correct location originated in a mistake, and it is immaterial what he might or might not have claimed had he known he was mistaken.” (Citations omitted). Sylvest v. Stowers, 276 Ala. 695, 697, 166 So.2d 423, 426 (1964).
“The rule has been applied in boundary line disputes that questions of adverse possession are questions of fact properly determined by the trier of facts, and that the determination so' made, where the evidence is taken orally, as here, is favored with a presumption of correctness and will not be disturbed on appeal unless plainly erroneous or manifestly unjust.” (Citations omitted). Casey v. Keeney, 290 Ala. 94, 98, 274 So.2d 68, 71 (1973).
Here, it was undisputed that appellant learned of the incorrect boundary after he bought the property and, although he discussed the disputed strip of land with appel-lees a few times, he never took any action to gain control of the strip for a period exceeding ten years. During this period appellees claimed the land as their own, farmed it, and grazed cattle on it. So open and notorious was the appellees’ position of the disputed strip that most of the witnesses who testified stated that they had assumed that the hedgerow was the boundary.
Appellant contends that the affidavit of Henry Clarence May should not have been admitted in evidence because it was ex parte and offered to prove adverse possession.
The affidavit in pertinent part is as follows:
“My name is Henry Clarence May. I am known in the community in which I live as Harry May. I am ninety (90) years of age and have lived in the community of the hereinafter described property since 1897. In 1907 I purchased the property now owned by Mrs. Charles W. Clark (Maude Clark) from W. C. Patrick. The description in my deed and in the Clark deed was the same, i. e.

“At the time I purchased the property D. W. Darden owned the forty (40) acres north of me. This property is now owned by James G. (Ben) Hagler. Mr. Jim R. Caldwell owned the property adjoining me from the south. In the year 1905 Mr. Darden and I established the north line of my property and put up a fence. This same line has, since the year 1905 to the present time, been recognized as the boundary line between the property now owned by Mrs. Clark and Mr. Hagler.
“In 1908 Mr. Caldwell and I established the south line of the property owned by me at that time and now owned by Mrs. Clark. The south line has remained the same and been recognized as being the south line from the year 1908 to the present time.
“I know of my own personal knowledge that since the year 1905 both the north and south line as now indicated by fences have remained exactly the same as established in 1905. The persons who have owned the property since 1905 are John Carr, R. C. Patrick, G. H. and E. L. Dawson, R. C. Patrick, J. E. Shirley, Henry Snyder, and Charlie Clark, Jr., and his *330 wife, Maude Clark. Charlie Clark, Jr., died in 1964. Each and every one of the owners of this property have openly, notoriously, and peacefully occupied the property from the south line as established in 1908 to the north line as established in 1905, said lines being the same as are now located by fences, each of the owners of this property have openly, notoriously and adversely claimed said property as against all the world and the possession has been peaceful.”
Affidavits meeting the requirements of Tit. 47, §§ 116 and 117, Code of Alabama 1940, Recompiled 1958, are admissible when material to the issues. Cloud v. Southmont Development Company, 287 Ala. 544, 253 So.2d 298.
The judgment is hereby affirmed.
AFFIRMED.
HEFLIN, C. J., and BLOODWORTH, FAULKNER and EMBRY, JJ., concur.