This is a boundary dispute between coterminous landowners concerning a strip of land approximately 150' X 770', but irregular in width. Plaintiff, Sarah Claybrook, claims the area by deed and by will. She has made all the tax payments on the property in question. Defendants, Frank Smith and Kenneth E. Smith, who are uncle and nephew, claim the area by adverse possession. The lower court heard the case, and upon the advice of the jury, found in favor of the plaintiff, and the defendants appeal. We affirm.
R.D. Claybrook and Sarah L. Claybrook, husband and wife, purchased a 44 acre farm on August 20, 1956, described as having the northern boundary line at:
 ". . . The North Boundary line of the South half of the Southeast Quarter of the Northeast Quarter, lying West of Alabama highway 17, in Section 22, Township 18 South, Range 14 West. . . ."
This boundary line, which is a government survey line, is an open field. There are some cedar trees, which over the years have grown into a hedgerow, to the south of this boundary line. It is the area between the boundary line and the cedar trees which is the subject of this dispute.
There was evidence that the area was set aside by the Claybrooks as a produce garden, and was used at various times to grow corn, millet and watermelon, and that in 1963, the Claybrook's son, Robert, used the plot to raise corn for his FFA project at school. The Claybrooks did not use the disputed land after R.D. Claybrook's death in 1967.
Lon Smith, the previous owner of the adjoining Smith farm, died in 1964, and the present owners, Frank Smith and Kenneth E. Smith, are his son and grandson. Frank Smith and Kenneth E. Smith purchased the farm from Lon Smith's other heirs in February of 1968, but did not record the deed until December 19, 1974.
The Smiths claimed that they used the property in 1971 for serecia, in 1972 for sudex, in 1973 for wheat, and in 1974 for soybeans. Claybrook claims to have had a "For Sale" sign on the land for eleven months in 1971, and that the land was then overgrown and not in use. In 1974, Claybrook notified the Smiths that they were trespassing and to cease immediately. Claybrook then had the land surveyed and put up a fence on the line established by the surveyor. Frank Smith tore down the fence, claiming the land was his. Claybrook then filed suit to establish the boundary line.
At the trial, there was much conflicting evidence as to the use of the land. During the period from 1963 to 1967, Claybrook claims he planted corn, millet and watermelon. The Smith's tenant during the period said that he had planted cotton and hay on the strip.
There was some evidence that there was at one time a hedgerow at the survey boundary line, and that the present row of cedar trees is not the same one as that old hedgerow.
The title to the land was never in dispute, and the Claybrooks have paid the taxes on the land since its purchase.
The defendants' only claim rests on adverse possession by use of the disputed land. In adverse possession, the burden of proof rests on the claimant, McLester Building Co. v. Upchurch,180 Ala. 23, 60 So. 173 (1912), to prove that his possession is actual, hostile, open, notorious, exclusive, and continuous for the statutory period. Lay v. Phillips, 276 Ala. 273,161 So.2d 477 (1964).
The trial court did not err in finding that the defendants failed to meet this burden. The defendants obtained possession in 1968, and assuming they adversely possessed the strip, they had done so only for about six years at the time suit was brought, thus they failed to show adverse possession for the statutory time period. Defendants claim, however, that they met *Page 1090 
the time requirement, if they are allowed to tack on the adverse possession of their predecessors in title. They citeCarpenter v. Huffman, 294 Ala. 189, 314 So.2d 65 (1975), in support of their claim. The facts of Carpenter are not present here. The area in dispute here is not well defined, it was not openly fenced, there is no house built upon it, and the evidence is highly disputed as to whether the defendants' predecessors in title intended to transfer or did, in fact, transfer the actual possession of the land. The trial judge could have found that the defendants failed to show that there was a continuous and exclusive control over the property upon which tacking could rest. Graham v. Hawkins, 281 Ala. 288,202 So.2d 74 (1967).
In short, the court could have determined that the defendants had shown their possession, at best, to have been sporadic and intermittent, never continuous, and that there was a lack of evidence that they either intended to maintain exclusive control over the property, or attempted to do so.
In summary, the evidence fully supports the findings of the trial court and will not be disturbed on appeal. Duncan v.Sherrill, Ala., 341 So.2d 946 (1977).
The appellants claim that the court misapplied the law, whether the jury was advisory or not, because the court gave an improper charge to the jury. They contend that even if the case was tried pursuant to Title 47, § 2, Code, and if the jury was sitting in an advisory capacity, the trial judge incorrectly applied the law in his own determination of the facts. They say this is so because the trial judge incorrectly charged the jury on the applicable law and that the record shows that the trial judge misunderstood the correct principles to be applied, especially as regards "tacking" of adverse possession.
First, this was not a case where either party was entitled to a trial by jury, as of right. Lucas v. Scott, 247 Ala. 183,24 So.2d 540 (1945). Second, we have examined the record, especially the trial court's order denying the motion for new trial, and we are not convinced that the trial judge incorrectly applied the law of this state on "tacking" in determining whether the appellants had met their burden of proving title by adverse possession. We find no error here.
Appellants claim that the court committed reversible error in comments made to witness Ashcraft during the trial. As we have pointed out, the jury was advisory merely, and the comments do not affirmatively show that the trial judge was biased or prejudiced.
Our cases adhere to the principle that the trial judge is vested with a wide discretion in determining whether or not incidents which occur during the course of a trial affect the rights of either party to have a fair trial, and his action may not be reviewed unless it clearly appears that his discretion has been abused. Our cases also recognize that the trial judge is in a better position than this court to determine the probable effect of such incidents. The record before us does not, in our opinion, justify a holding that the trial judge abused his discretion. Boudrow v. H R Construction Co.,284 Ala. 60, 222 So.2d 154 (1969).
Appellants also claim that the trial court committed reversible error in refusing to admit into evidence an aerial photograph. The photograph was not part of the records of the county office of the Agricultural Stabilization Service, and the witness did not have actual knowledge that the photograph was a true and accurate portrayal of the land in question. Furthermore, a similar photograph, which was properly identified, was admitted into evidence. The trial judge acted within his discretion. Cf., Moon v. Nolen, 294 Ala. 454,318 So.2d 690 (1975).
AFFIRMED.
TORBERT, C.J., and FAULKNER, SHORES and BEATTY, JJ., concur. *Page 1091