This action involves a boundary line dispute and the operation of adverse possession between two coterminous landowners. The land in dispute is located in Marion County. The land is in the shape of a right triangle situated at the northwest corner of a parcel of land described as the SE 1/4 of the NE 1/4 of Section 31, Township 10 South, Range 11 West, of Marion County. The triangle is bounded on the west and the north by the property of plaintiffs, Alvis and Myrtle Garrard. The hypotenuse of the triangle runs from southwest to northeast, along a ditch or stream. An old field road is slightly to the west of the ditch and runs parallel to it. Between the road and the ditch is a "cocklebur patch." The ditch is bordered on the southeast by the land of Luther and Robbie Rae Nelson, defendants.
The Nelsons acquired their land in 1954 and 1956 by separate deeds. One deed conveyed the SE 1/4 of the NE 1/4 of Section 31, but did not specifically refer to the disputed land. In 1954, Luther Nelson constructed a fence along the west side of the ditch. Nelson testified that he believed the ditch to be the boundary line between his property and the land of the Garrards' predecessors. Nevertheless, in 1979, Nelson received payment for trees removed from the cocklebur patch between the old field road and the ditch.
In 1977, the Garrards made a down payment on their land and acquired title to it in 1978 from the Dosses. The Garrards rented the land from the Dosses from 1972 until they purchased it in 1978. Since 1972, the Garrards have farmed a portion of the land up to the old field road. Several witnesses testified that the Garrards' predecessors in title, or their tenants, had farmed the land in controversy since 1915. The witnesses also testified that the prior title holders to the Garrards' land believed the disputed strip to be part of their property.
The Garrards hired Jack Luden to survey their land in 1978. The survey revealed that the disputed land fell within the SE 1/4 of the NE 1/4 of Section 31, the property described in the deed of the Nelsons. Mr. Nelson knew of the survey and the two parties discussed the boundaries on occasion. A conflict arose between the Garrards and the Nelsons over ownership of the triangular portion of property. Nevertheless, the Garrards continued to farm the land in question. On May 19, 1980, the Garrards filed an action to establish the boundary line between the two properties. On January 21, 1981, the trial court entered a decree establishing the boundary as the old field road. The property northwest of the road was awarded to the Garrards, and the property southeast of the road was awarded to the Nelsons. The Nelsons appeal.
On appeal, the Nelsons contend that the trial judge erred in awarding any portion of the land to the Garrards. The Nelsons do not contradict the fact that they believed the ditch to be the boundary between the two properties, but contend that the land has not been farmed continuously since 1915. The Nelsons also argue that they and the Garrards entered into an agreement to allow the 1978 survey to establish the boundaries between their lands.
The first issue on appeal is whether the judgment of the trial court is supported by credible evidence. The second issue is whether a claimant may establish adverse possession beyond a government survey line. *Page 232 
A decree entered by a trial court establishing a boundary line between coterminous landowners is presumed to be correct. When evidence is submitted ore tenus, the decree must only be supported by credible evidence and will only be disturbed if plainly erroneous or manifestly unjust. Campbell v. Carl,395 So.2d 480 (Ala. 1981); Kirby v. Jones, 370 So.2d 250 (Ala. 1979); Smith v. Nelson, 355 So.2d 359 (Ala. 1978). The presumption of correctness of a trial court's decision is strengthened when the trial judge views the land in controversy.
The evidence establishes that the disputed land has been farmed since 1915 by the predecessors in title of the Garrards. Several witnesses testified that the prior titleholders believed the strip was part of their property. Even the defendant, Luther Nelson, testified that he believed the boundary between the two properties to be the ditch running along the southeast border of the disputed section. The only evidence to dispute. the Garrards' ownership of the land by adverse possession is the assertion that the parties agree that the survey conducted in 1978 would establish the boundaries. Although the record shows Mr. Nelson and Mr. Garrard discussed the survey, there is no clear proof that the parties entered into an agreement. Credible evidence supports the finding of the trial judge that the boundaries were not the lines of the government survey.
The trial court expressed confusion over whether there may be adverse possession across government survey lines. An examination of our cases establishes that parties may not vary the location of government survey lines by agreement or by act.See Guyse v. Chappell, 367 So.2d 944 (Ala. 1979); Sims v. Sims,273 Ala. 103, 134 So.2d 757 (1961). Nevertheless, a party who holds property by adverse possession for the statutory period may claim title even though possession is over the boundary line. See Mardis v. Nichols, 393 So.2d 976 (Ala. 1981); Guysev. Chappell, 367 So.2d 944 (Ala. 1979); Oliver v. Oliver,187 Ala. 340, 65 So. 373 (1914).
In Murphree v. Swann, 342 So.2d 329 (Ala. 1976), this Court refused to permit adverse possession over a survey line. Nonetheless, the case does not stand for the proposition that there can be no adverse possession over government survey lines. Justice Maddox stated, "Some of [plaintiff's] predecessors in title may have been able to claim title to the disputed strip by adverse possession." Id. at 330. The essence of the Court's holding in Murphree v. Swann is that tacking of periods of adverse possession is not permissible unless the prior adverse possessor is the immediate transferor. "[W]here a deed described the land conveyed by government survey, the grantee can acquire no title to a disputed area beyond the government line, which his predecessors acquired by adversepossession." Id. (emphasis added). But in Watson v. Price,356 So.2d 625 (Ala. 1978), this Court rearticulated the rule concerning tacking of periods of adverse possession. If all elements of adverse possession are present, a successive possessor may tack all prior periods of adverse possession. Id.
at 627. Tacking is permissible unless the evidence clearly shows prior possessors did not intend to convey the disputed land.
The elements of adverse possession are "actual, hostile, open, notorious, exclusive and continuous [possession] for the statutory period." Guyse v. Chappell, 367 So.2d at 946 (quotingSmith v. Claybrook, 349 So.2d 1087, 1089 (Ala. 1977)) (emphasis omitted). Ample testimony supports the Garrards' contention that they or their predecessors actually farmed the disputed area from 1915 to the present. The possession of the area actually farmed was open, notorious and continuous. The trial judge correctly held the Garrards owned the portion of the disputed land to the west of the old field road by adverse possession.
But the Garrards' or previous titleholders to the Garrards' land never actually possessed the portion of the disputed area to the east of the old field road. The cocklebur patch has never been farmed. Luther Nelson testified that the patch was probably not arable. Furthermore, Mr. *Page 233 
Nelson received payment for trees that were cut down from this section of land. Even if this payment is insufficient standing alone to establish that the Nelsons owned and controlled the land, the Garrards failed to carry their burden of establishing adverse possession of the strip. The element of actual possession or use of the patch is absent. Therefore the trial judge correctly awarded the property between the old field road and the ditch to the Nelsons.
The finding of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, EMBRY and ADAMS, JJ., concur.