This is a land line dispute between coterminous land owners. The disputed segment was approximately sixty by nine hundred feet. The defendants, Ross Cotter and Cotter *Page 103 
Enterprises, Inc., owned record title to the strip. The plaintiffs, Adolph Hayes and the Mt. Zion Baptist Church of Enterprise, Inc., claimed title by adverse possession. The trial court, sitting without a jury, found in favor of the defendants and the plaintiffs appealed.
The descriptions contained in the parties' deeds provided that their common boundary was the line separating the northeast quarter of the southwest quarter of section 12 from the northwest quarter of the same quarter section located in Coffee County, Alabama. The southern boundaries of both parcels were marked by Alabama highway 248. The plaintiffs' property lies due east of the defendants'.
The plaintiffs produced numerous witnesses to support their claim of adverse possession. Ray Sconiers, who was 78 years old at the time of the trial, testified that he moved onto the land now owned by the defendants when he was three. At that time his family's land included the parcel directly across the roadway from the Cotter parcel as well as the Cotter property itself. When he was thirteen or fourteen, Sconiers helped his father and Mr. Hayes build a fence along their land line south of the road. The fence ran in a southerly direction from the southern edge of the road. Although they did not build a fence along the border of the property in question north of the road, the Sconiers and Hayes families would plow up to a "turn row" which was, in Sconier's words, "on the same line" as the fence across the road.
Theodore Whitehurst farmed a portion of the Cotter parcel from 1933 until 1949. He testified that when he took possession of the land the owner, Mr. Sconiers, showed him the eastern boundary of the property and every year he plowed up to a turn row which was "straight across the road" from the fence south of the road. He also testified that the Hayes property was cultivated up to the same turn row during that period of time.
Earl Henderson purchased part of the Sconiers' place in 1937 or 1938. He owned what later became the northern half of the Cotter parcel. He testified that the portion of his eastern boundary below the woods was marked by a turn row in line with "that old line across the road."
The plaintiffs also produced witnesses who had farmed the Hayes property. Their testimony was in accord with that of the witnesses who had lived on the Cotter parcel. B.H. McDonald moved onto the Hayes place in 1923. He testified that the fence was in existence when he moved onto the land and that at the time of the trial it was still in the same location. According to McDonald there was a "piled high furrow" north of the road between the Hayes property and the Sconiers place, and that "you could look down that plowed furrow and compare it right straight with the fence south of the road."
Fate Terry, age 56 at the time of the trial, moved onto the Hayes property as a child. He cultivated the Hayes property, including the property where the Mt. Zion Baptist Church was later built, at the same time that Theodore Whitehurst was farming the Cotter parcel. Terry testified that the line where he and Whitehurst turned around when plowing their respective plots was "straight and level across" from the fence.
In 1945 Ervin and Arsolar Hayes conveyed a one-acre segment of land at the southwest corner of their property to the Mt. Zion Baptist Church, which was later incorporated as the Mt. Zion Baptist Church of Enterprise, Inc. Fate Terry continued to farm the remainder of the Hayes property, including that portion of the disputed strip to the north of the church property.
The Neal family replaced the Terrys as tenants on the Hayes place in the late 1950's. Richard Neal testified that he would plow to a "rise on the line" which Hayes had shown him. Neal described the location of the rise as "parallel with the fence across the road."
The Neals moved away and were replaced by Clem Henderson in 1962 or 1963. Henderson occupied the Hayes property up to and including the time of the trial. He *Page 104 
testified that he had planted a crop each year as far west as a turn row which "lined up with" the fence.
During the early 1970's, a subdivision was built on the property across the road from the Cotter parcel. When platting the subdivision the surveyor used the fence line as the eastern boundary of the subdivision because it was accepted by the coterminous land owners as the property line.
When Cotter bought the parcel north of the road to develop as a subdivision, he hired Veston Bush to survey the property. Bush testified that the south 190 feet of the strip in dispute (the portion adjacent to, and claimed by, the church) was in "high vegetation" when he first inspected the property. The next 310 feet had been plowed and the northernmost portion, about 400 feet deep, was wooded. Bush prepared a survey and made a drawing of the dimensions of the property on a photograph depicting the acreage surrounding the land line.
On the basis of Bush's survey Cotter began preparing the land for construction of buildings. According to Clem Henderson, Cotter's builders bulldozed part of his corn field. The disagreement over the land line ensued and the plaintiffs filed suit.
 "If a coterminous landowner holds actual possession of a disputed strip under claim of right, openly and exclusively for a continuous period of 10 years, believing that he is holding to the true line, he will acquire title to that line, even though the belief as to the correct location of the line originated in a mistake. It is immaterial what he might or might not have claimed had he known he was mistaken. While intent to claim the disputed strip is required, there is no requirement that the intent be to claim property of another, as such a rule would make adverse possession dependent upon bad faith. Possession is hostile when the possessor holds and claims property as his own, whether by mistake or willfully."
Reynolds v. Rutland, 365 So.2d 656, 657-658 (Ala. 1978); Haglerv. Clark, 337 So.2d 327, 329 (Ala. 1976); Smith v. Brown,282 Ala. 528, 535, 213 So.2d 374, 380 (1968).
The plaintiffs in the instant case produced numerous witnesses who testified that the Hayes family and their tenants cultivated the disputed strip continuously from 1923 until 1979. Cultivation by a coterminous landowner up to a turnrow is a sufficient possessory act to constitute adverse possession.Cambron v. Kirkland, 287 Ala. 531, 535, 253 So.2d 180, 183
(1971); Withers v. Burton, 268 Ala. 365, 371, 106 So.2d 876,880-881 (1958).
Three witnesses testified on behalf of the defendants. John Morgan sold the property to Cotter. Morgan testified that he had not farmed the land for fifteen to twenty years before he sold it and that he did not know exactly where the line was. Cotter himself knew nothing of the history of the land. When Veston Bush, the surveyor hired by Cotter, was asked whether, in his professional judgment, he saw any evidence of adverse possession when examining the property, he replied "[nothing] except the plowed field was being used."
When evidence is presented ore tenus and a trial court establishes a boundary between coterminous land owners, the decree is presumed correct and need only be supported by credible evidence in order to withstand appeal. Nelson v.Garrard, 403 So.2d 230, 232 (Ala. 1981). In the case subjudice, however, defendants cited us no evidence rebutting the plaintiffs' testimony of adverse possession nor did we find any such evidence during examination of the record. In light of the uncontroverted testimony that the plaintiffs and those in privity with the plaintiffs cultivated the disputed parcel, and where the undisputed evidence proves all the elements of adverse possession, the trial court's decree was clearly erroneous. Bussey v. Bussey, 403 So.2d 907 (Ala. 1981).
While the evidence of cultivation was uncontroverted, we note that the northernmost 400 feet of the disputed strip was wooded. There was no evidence that the plaintiffs ever adversely possessed the wooded portion of the disputed parcel. Therefore, as to the wooded portion, the *Page 105 
trial court's decree is due to be, and is, affirmed.
The southernmost 190 feet of the disputed strip was also uncultivated when Mr. Bush made his survey. It was, however, cultivated for a sufficient length of time before the church was built to enable plaintiffs to claim title to that segment. Once title vests by adverse possession the possessor retains title unless divested in some manner in which any other property owner might be divested. Barry v. Thomas, 273 Ala. 527,531, 142 So.2d 918, 922 (1962); Marsh v. Gragg, 228 Ala. 269,272, 153 So. 219, 221 (1934).
The decree of the trial court is affirmed in part and reversed in part. The case is remanded to determine the exact location of the boundary established by adverse possession by cultivation of the disputed area.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and JONES, ALMON and ADAMS, JJ., concur.