SHORES, Justice.
Harold and Carol Hackman, defendants, appeal from a judgment against them in this boundary line dispute between coterminous landowners. We affirm.
The Maunds, plaintiffs, have owned since 1964 eighty acres of land in Geneva County, Alabama. The east boundary line of their property fronts on Morris Street, a paved, city-maintained street. The Hack-mans own the forty acres of land lying directly south of the Maunds’ westernmost forty acres. Access to the Hackman property is by way of Dr. Steven Road, a small, unpaved road running west from Morris Street along the southern boundary line of the Maunds’ eastern forty to the eastern side of the Hackmans’ forty. From that point westwardly, the road is a dirt “field” road. It is the strip of land on which the field road lies that is disputed. The strip is about thirty-three feet wide, measuring north from an old fence which parallels the southern edge of the field road. The road itself is generally straight, except for a slight bend in it; as it extends westward, it tends toward the south. Its westernmost point is about twenty feet further south than its easternmost point.
*900 Both parties claim the disputed strip of land. The Hackmans rely upon a survey performed at their request by John Peacock in October 1981, just a few days before the plaintiffs (Maunds) filed this action seeking to establish the boundary line between the properties of these coterminous owners. The survey fixed the forty line, which the Hackmans contend is the boundary line, on the north side of the field road, placing the road upon land owned by the Hackmans.
The Maunds also claim that they hold the title to the strip of land. Mr. Maund and his immediate predecessor in title testified that the property line was marked by an old fence, part of which still existed. The strip claimed by the Maunds includes all of the road, which is, and has been for many years, used by Mr. Maund as a field road. It is the only access to his back (westernmost) forty acres.
The Maunds’ original complaint sought a permanent injunction against the Hack-mans prohibiting them from blocking the road, and an order declaring a recorded easement from the Maunds’ predecessors to the Hackmans’ predecessors to the field road, null and void. An amendment to the complaint requested the trial court to locate the boundary at the fence and establish permanent judicial landmarks.
Following an ore tenus hearing, this order was issued:
“The Court further finds that the plaintiff has been in open, notorious, continuous and exclusive possession of the land in question up to the fence since 1964 or for a period of more than ten years. The Court further finds that there was an intent on the part of the plaintiff to hold and enjoy the property up to the line (the fence), claimed by the plaintiff as the true dividing line. The Court further finds that the plaintiff exercised domain [dominion?] over the questioned property and used the questioned property as in its present state it was reasonably adapted to. Mardis v. Nichols, 393 So.2d 976 ([Ala.] 1975); Limbaugh v. Richardson, 402 So.2d 957 ([Ala.] 1975 [1981]).
“Therefore, it is ORDERED, ADJUDGED AND DECREED as follows:
“1. That the boundary line between the plaintiff and the defendant is hereby established as the old fence line and now [sic] which has been in existence at least since 1964.
“2. That the line is more particularly described as follows, subject to an accurate survey of the line:
“(a) Begin where the 40 line or Peacock Survey line traverses the East line of the plaintiffs and defendants. (East being adjacent to the Wood property),
“(b) thence proceed in a westerly direction along the Peacock Survey line until it intersects the south side of the existing farm or field road,
“(c) thence proceed along the south side of the field road to a point parallel to [the] end of the old fence or fence row,
“(d) then proceed to the East end of the old fence or fence row,
“(e) then proceed westerly along the old fence or fence row to the west forty line.
“3. That a surveyor shall be appointed by the Court to establish permanent judicial landmarks according to this judgment. That the Court will appoint a surveyor agreed upon by the parties if the parties submit an agreed name within 15 days from the date of the decree. That the cost of the survey will be borne equally by each party.
“4. That the 20' easement in question in this case is declared null and void.”
On appeal, the Hackmans challenge the findings that the fence marks the boundary line, that the Maunds obtained title to land north of the fence by adverse possession, and that the easement by grant is null and void.
The longstanding rule for reviewing boundary line cases was most recently stated by Mr. Justice Faulkner:
“When evidence is presented ore tenus and a trial court establishes a boundary between coterminous land owners, the decree is presumed correct and need only *901 be supported by credible evidence in order to withstand appeal.”
Hayes v. Cotter, 439 So.2d 102 at 104 (Ala. 1983).
The witnesses called on behalf of the Maunds consistently testified that the fence on the south side of the field road marked the boundary line between the Maunds’ west forty and the Hackmans’ property. The witnesses agreed that the fence and road had never been moved from their present location. Mr. Willoford testified that he was the previous owner of the Maunds’ property and had owned all the land north of the fence. He stated that he had intended to, and did, sell to the Maunds this very same tract of land. Mr. Willoford and Mr. Maund testified that, during their respective periods of ownership, they had regularly performed maintenance work upon the field road and used it to reach the pasture in the back forty. Several witnesses, including Mr. Maund and Mr. Willoford, testified that the Hackmans’ predecessors had used the field road, but only upon the express permission of the Maunds or Willo-fords.
In total opposition, the Hackmans’ witnesses testified that the property line was on the north side of the road, giving title of the disputed area to the Hackmans. There was testimony that the fence, which the Maunds claim to be the southern boundary of their property, had actually been moved from its original position on the north side of the field road to the south side, and then to its present, most southern position. Furthermore, the Hackmans entered into evidence a survey performed at their request which established the line along the north side of the road. They also presented evidence that the Maunds had never performed maintenance work upon the road, and that all work was done by the Hackmans, their predecessors in title, and Geneva County road crews.
We have decided many eases similar to the present one. One case which is particularly compelling is Ray v. Stewart, 442 So.2d 5 (Ala.1983). This Court stated:
“It is understatement to assert as plaintiff did in her brief to this court, that most of the facts in this case were disputed by the parties and their witnesses at trial. There was considerable disagreement concerning not only the location, but also the existence of certain old fences along the boundary lines. This court recently addressed the nature of its review of a circuit court’s establishment of a boundary that was ardently disputed by the parties at trial in Evans v. Green, 411 So.2d 788 (Ala.1982). In that case we said:
“ ‘It is well settled that “[o]n appeal from a decree of the equity court establishing a boundary line between coterminous lands on evidence submitted ore tenus in open court, the decree of the lower court is presumed to be correct and in such case, the trial court’s conclusions of fact will not be disturbed unless palpably erroneous or manifestly unjust.” Jones v. Wise, 282 Ala. 707, 213 So.2d 914 (1968). The facts presented in the lower court are conflicting and contradictory. The trial judge had the opportunity to resolve the conflicting evidence by observing the demeanor of the witnesses as they gave their testimony and by examining the exhibits as they were presented.’
“411 So.2d at 788.”
442 So.2d at 6.
We affirm the trial court’s finding that the Maunds had obtained title to the disputed strip, specifically, the land north of the fence which runs along the southern edge of the field road, by adverse possession. There is evidence that from 1953 to 1964, a period of more than ten years, the Maunds and their predecessors openly, adversely, exclusively, and continuously possessed the disputed area under color of title. Mardis v. Nichols, 393 So.2d 976 (Ala. 1981); Code 1975, § 6-5-200. Although the evidence is disputed, it does support the judgment. The judgment is not unjust or clearly erroneous.
Finally, we consider the finding that an easement, given in 1955, is now null and *902 void. The grantors were the Willofords, predecessors in title to the Maunds, and the grantees were the Malones, then owners of the Hackman property. The easement states:
“[T]he said parties of the first part [grantors] ... do grant, bargain, sell and convey unto the said party of the second part [grantees], and unto their heirs and assigns, the use of and the right-of-way over 20 feet in breadth on the South part of the SEVi of the NEV-i, Section 23, Township 2, Range 24, of Geneva County, Alabama, being property on the North now owned by the parties of the second part, for the purpose of ingress and egress of said parties of the second part, their heirs, assigns, tenants, or the occupiers of the premises of the said parties of the second part in common with the parties of the first part, their heirs or assigns or persons holding under them.
“It is further agreed that the party of the second part shall have a right to build a dam on said property, providing the dam shall be of width to accommodate any vehicle, and if the parties of the second part do not comply with the matters and things set out herein, then this easement shall be null and void.”
The Hackmans argue that the document speaks for itself and clearly states that the easement is given “for the purpose of ingress and egress” to the Hackman property. Furthermore, they argue that the grantees had permission or a “right” to build a dam, but certainly were not required to do so as a condition for the continuation of the easement.
Mr. Willoford testified that his intent was to grant an easement to allow the Malones to build a dam of sufficient size and width to accommodate vehicular traffic. However, if the dam were not built at all, or to specification, the easement would be null and void. The purpose for the easement was not solely to give access to the Hackman property. Access to the Hackman property was otherwise provided by Dr. Steven Road. This is still true today. The evidence supports the trial court’s finding. The purpose for which the easement was given has lapsed and, by its terms, the easement is now void. Trustees of Howard College v. McNabb, 288 Ala. 564, 263 So.2d 664 (1972).
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.