HORNSBY, Chief Justice.
This is a landline dispute. The Hisers appeal from a judgment of the trial court that determined the correct coterminous boundary of the parties to be that boundary shown by the Hulseys’ surveyor, Jack Loden. The plaintiffs, Joel and Maridane Hiser, had lived in California since 1974. In 1985, they purchased the N ½ of the SE ⅝ of Section 23, Township 10 South, Range 11 West in Marion County, Alabama. The Hulseys own the S lh of the NE ¼ of Section 23. Thus, the Hisers purchased the property south of the Hul-seys. The location of the government survey line separating the two 40-acre parcels is disputed. The Hisers contend that the government survey line dividing the tracts is a line determined by their surveyor, W.E. Batchelor. The Hulseys contend that the government survey line dividing the tracts is a line determined by their own surveyor, which approximately follows the path of an old fence and which is south of the line found by the Hisers’ surveyor.
Thus, as the Hisers state in their brief, the main issue presented to the trial court was the determination of the true location of the south line of the NE lh of Section 23 *6 which is also the north line of the SE ¼ of Section 23.
The trial court heard this case without a jury. In Moore v. Johnson, 471 So.2d 1250, 1251-52 (Ala.1985), we discussed the standard of review in cases in which the evidence is presented ore tenus, particularly boundary line dispute cases:
“When evidence is presented ore tenus and a trial court establishes a boundary between co-terminous land owners, [if supported by the evidence,] the decree is presumed correct and need only be supported by credible evidence in order to withstand appeal. Nelson v. Garrard, 403 So.2d 230, 232 (Ala.1981).”
Moore at 1252, citing Hayes v. Cotter, 439 So.2d 102, 104 (Ala.1983). Under this standard of review, the Hisers must show that there was no credible evidence to support the trial court’s judgment. We are of the opinion that the Hisers have not met this burden, and the trial court’s judgment is due to be affirmed.
Our discussion begins with a review of the pertinent facts. When the Hisers applied for a loan to finance the purchase of their property, the lender required evidence of good title. W.E. Batchelor surveyed the. property for the Hisers shortly before the purchase. Mr. Batchelor’s survey showed what he believed to be the coterminous boundary. This survey was used as the basis for the warranty deed given to the Hisers at the loan closing.
On April 2, Mr. H.T. Hulsey, Mr. Hiser’s uncle, visited James Hulsey (H.T. and James are first cousins) in order to procure a quitclaim deed from James and his wife, Lorali Hulsey, for certain property. H.T. Hulsey explained to James and Lorali that “their deed was messed up” and that for the adjacent landowner to the south, Verna B. Parson, to be able to sell her property to the Hisers, the Hulseys needed to execute a quitclaim deed to Mrs. Parson. H.T. Hulsey told James and Lorali that the deed concerned only Mrs. Parson’s “getting her land straightened out.” The quitclaim deed conveyed the following:
“The N ½ of SE ⅝ and ten (10) acres of uniform width off the South side of the NE ¼ of SW ¼ of Section 23, Township 10 South, Range 11 West, Marion County, Alabama.”
We note from the record that the additional ten acres conveyed from the “South side of the NE lk of SW ¼ of Section 23” is not in dispute here. James and Lorali executed this quitclaim deed on April 2, 1985. There was no discussion regarding the location of the property line that is the subject of this appeal.
On April 6, 1985, Mrs. Parson executed a warranty deed to the Hisers conveying the N ⅛ of the SE ¼ of Section 23. At closing, the Hisers paid the purchase price and received the Batchelor survey, the quitclaim deed, and the warranty deed. Mr. Hiser went to see James Hulsey regarding the placement of a new fence on the property line as determined by the Batchelor survey, just north of the existing fence. During this visit, Hulsey informed Hiser that he did not agree with the location of the coterminous boundary as established by the Batchelor survey. Mr. Hulsey believed that the existing fence, south of the Batchelor survey line, marked the correct boundary line.
The Hisers’ complaint in this action was filed on January 22, 1986. The Hulseys, during the course of pleading and discovery, hired Jack W. Loden to survey the property in question. After hearing the evidence presented at trial, including testimony by both surveyors, the trial judge found the correct boundary line dividing the two 40-acre tracts to be that shown by the Loden survey, i.e., that line which approximately follows the existing fence line, south of the line established by the Batche-lor survey.
Although the trial court’s order does not mention adverse possession, the Hisers contend on appeal that the trial court erred in holding that the Hulseys had acquired title to the land north of the fence and below the line shown by the Batchelor survey by adverse possession. They insist that the Hulseys gave any right they had to the N ⅝ of the SE ¼ away when they executed the quitclaim deed to Mrs. Parson.
*7 The Hulseys insist that they rightfully acquired the property north of the fence by adverse possession and that the quitclaim deed was fraudulently obtained by H.T. Hulsey. This issue of fraud was not properly preserved for review, however. Nothing in the record shows that fraud was raised as an issue. The evidence is undisputed that the fence claimed as the boundary line by the Hulseys was in place in 1933 or 1934, prior to the time James Hul-sey’s parents moved onto the property. There was continuous, uninterrupted use of the land by the Hulseys since at least 1943.
The Hisers’ contention that the quitclaim deed cut off the Hulseys’ adverse possession of the property does not address the issue of the location of the boundary under these facts. The only issue before the trial court was the determination of the boundary line dividing the two 40-acre parcels. The quitclaim deed to Mrs. Parson did convey all the rights the Hulseys had in the N V2 of the SE ¼ (as well as 10 acres off the south side of the NE ¼ of the SW V4 of Section 23). The fact that this quitclaim deed was given to Mrs. Parson does not resolve the issue of exactly where the correct boundary line is. That was properly determined by the trial court. Because the trial court found the boundary to be the original government survey line, which approximately follows the existing fence line, the quitclaim deed, conveying only property south of that line, did not convey the property the Hulseys are claiming by adverse possession, i.e., the property north of the existing fence line and south of the Batchelor survey line.
We have previously stated that “the government survey of lands into sections does not establish the ground location of the interior subdivision lines, ... but provides a basis for locating such lines.” Ryan v. Fulford, 273 Ala. 600, 602, 143 So.2d 452 (1962).
The record reveals that, while field notes were left by the government surveyors, the measurements taken with the instruments available at the time may not have been entirely accurate. Both experts testified that the sections in this area are wider on one side, causing each property owner in these sections to have boundaries not entirely of equal length. A review of the testimony by the surveyors reveals a conflict.[1] Loden testified that the east side of Section 23 was longer than the west side. Batchelor testified to an opposite finding. Loden testified that the extra 300 feet of the section is located in the north portion of that section. Batchelor testified that the extra property is located in the south portion of the section. Batchelor testified that he found all the section corners. However, his later testimony reveals that he did not find two specific corners.[2] Batchelor also admitted that Loden’s map did appear to be correct as far as the disputed property was concerned.
This ore tenus evidence was heard and reviewed by the trial judge as the factfinder. He heard and saw the witnesses and observed their demeanor; it was his duty to assess their credibility. It follows that his judgment as to the true location of the boundary line is presumed to be correct, and that presumption has not been overcome. The judgment of the trial court is hereby affirmed.
AFFIRMED.
JONES, SHORES, HOUSTON and KENNEDY, JJ., concur.

. The record in many places is unclear due to the witnesses’ describing the corners without indicating exactly which corner is being described. Further, references to boundary lines and their locations are unclear.

. Again, it is unclear from the record exactly which corners are being discussed by the witness.